430 P.2d 576

Edward Wilson AMMERMAN, by his guardian ad litem, LaVerne Bruce Ammerman, and Eddie Soliz, Plaintiffs and Respondents,

v.

FARMERS INSURANCE EXCHANGE Defendant and Appellant.

No. 10574.

Supreme Court of Utah.

July 25, 1967.

---

Don J. Hanson, Salt Lake City, for appellant.

Kipp & Charlier, McKay & Burton, Salt Lake City, for respondents.

CROCKETT, Chief Justice:

This case is a sequel to Soliz v. Ammerman,[1] in which the plaintiff recovered

a judgment for $15,282 for injuries and damages resulting from an automobile collision at the intersection of Second West and 200 North Streets in Salt Lake City in June of 1962. Ammerman's insurer (defendant Farmers Insurance Exchange) had engaged in unsuccessful negotiations to settle that action and had defended Ammerman at the trial, and after the adverse jury verdict and judgment had paid the plaintiff Soliz the amount of its policy limit of $10,000.

This suit was instigated by Soliz against the defendant insurance company to recover the $5,280 balance of his judgment in addition to the $10,000 it has paid him. He bases his claim here on the allegation that in the prior case the company exercised bad faith in failing to protect Ammerman when it rejected Soliz's offer to accept $9,000 to settle his claim against Ammerman before trial. His position is that if that offer had been accepted it would have left Ammerman free of any further concern or liability on the claim. Just why Soliz should have such solicitude for Ammerman's welfare would normally arouse one's curiosity, except for the obvious cupidity involved. It is part of a pivotal problem presented in this case by defendant's contention that Soliz was improperly permitted to be a party plaintiff. In order to get to the heart of this issue it is essential to look through superficial-ities to analyze the practical realities of the situation.

The payment by defendant of the amount of its policy is the only payment that has been made on the judgment. Ammerman, the one who would be injured by defendant's alleged wrong in refusing to settle, has not suffered any out of pocket loss. Although his name appears as a co-plaintiff, he has not manifested any active interest or concern with this case. It was instituted by the attorneys who represented Soliz against Ammerman in the prior action. Ammerman's attorney appeared only at the beginning of the trial and then departed. Ammerman himself has not appeared either in the lower court or here. There is no indication that the attorneys for Soliz, who presented the case both in the lower court and on appeal, represent anyone other than Soliz. These facts seem to indicate quite definitely the correctness of the defendant's contention that the moving force in initiating and carrying on the present action is the plaintiff Soliz. It is therefore appropriate that we direct attention to the issues as they exist between the real parties in interest, Soliz and the defendant.

█ In assessing the claimed right of Soliz to take this cause of action for himself the first problem presented is that at the time of the alleged wrong by the defendant company it had no privity of con-

tract with Soliz and therefore owed him no duty, so there could be no breach thereof.[2] Moreover, it is difficult to see how it caused him any damage. He is in the anomalous position of saying to the defendant: You have done me wrong by rejecting my offer to accept $9,000 in settlement. As a result, I obtained $10,000 and a judgment for $5,280. Inasmuch as he actually received more than he would have from the settlement, as between himself and the insurance company, he does not show any damage, which is usually considered to be an essential element of a cause of action.[3]

Soliz seeks to avoid the requirement of proving damage by urging that even though not damaged himself, as Ammerman's creditor, he is in effect a third-party beneficiary of Ammerman's claim against the defendant insurance company. But that position still confronts him with this dilemma: either the cause of action is vested in him or it is not. If it is not, he has no basis upon which to sue. If the cause of action is his, then he is met with the difficulty discussed above concerning his damage.

Co-ordinate to the problem just discussed in impelling the conclusion we have reached is the proposition that Soliz, merely because he is Ammerman's creditor, cannot appropriate to himself a tort claim Ammerman may have against the defendant insurance company. The policy does provide that:

> Whenever judgment is secured against the insured * * * [bodily injury— property damage] * * * an action may be brought against the company on the policy and subject to its terms and limitations, by such judgment creditor * * *

If the action were on the policy it would be subject to its limitations, i. e., the $10,-000 face of the policy, which has been paid. But the cause of action for bad faith, though arising because of the policy, is not, strictly speaking, an action on the policy. Its effect is to override the provision limiting coverage, and it is properly regarded as a separate cause of action for a wrong done to the insured by violating a fiduciary duty owed him.[4]

The general rule is that a judgment creditor has no right to appropriate a tort claim of his debtor. It is not the policy

2. Tabben v. Ohio Casualty Insurance Co., 250 F.Supp. 853 (E.D.Ky.1966).
3. See Keeton, Liability Insurance and Responsibility for Settlement, 67 Harv.L. Rev. 1136, 1176 (1954); Paul v. Kirkendall, 6 Utah 2d 256, 311 P.2d 376; Dillingham v. Tri-State Insurance Co., 214 Tenn. 592, 381 S.W.2d 914 (Tenn.1964);

Francis v. Newton, 75 Ga.App. 341, 43 S.E.2d 282; Duncan v. Lumberman's Mutual Casualty Co., 91 N.H. 349, 23 A.2d 325.
4. See Paul v. Kirkendall, supra; Murray v. Mossman, 56 Wash.2d 909, 355 P.2d 985.

of the law to encourage litigation. Even if a party has been wrongfully injured there may be any number of personal reasons why he would prefer to let the matter drop than to bring a lawsuit. The privilege of deciding whether to do so should be up to him and not up to some third party to inject his interest into the matter.

■ For the foregoing reasons we can see no sound basis upon which Soliz could maintain this suit. Consequently the trial court was in error in overruling the defendant's objection to him as a party plaintiff. Furthermore, in the present status of this case it would seem manifestly unfair to permit the judgment to stand undisturbed as to the nominal plaintiff Ammerman who has not actually been in the action. If so, Soliz could benefit therefrom and accomplish indirectly what he could not do directly and thus circumvent the rules hereinabove discussed which prevent him from taking and maintaining this cause of action for himself.[5]

In view of the fact that the proceedings both in the district court and on appeal have been concerned only with the rights of the plaintiff Soliz by reason of which it has been found necessary to remand this action sustaining the defendant's objection to him as a party plaintiff, and because other contentions made are on appeal, certain further observations are deemed to be in order.

■ The covenant in the policy requiring the insurer to defend the insured imposes upon it a fiduciary responsibility. Where there is an offer to compromise a claim for less than the policy limit, the acceptance of which would relieve the insured of liability, a conflict of interests may exist. The question then arises as to the extent of the duty of the insurance company to safeguard the interest of its insured as compared to its own. It is true that the company cannot properly gamble with or sacrifice the insured's interest simply to protect itself.[6] By the same token it is neither practical nor reasonable to expect it to subvert its own interests entirely to protect the insured by requiring it to accept any offer below the policy limits; regardless of circumstances, and however questionable the issues of liability and damage may be.

The total problem should be looked at realistically, and the standard of conduct dictated by reason and prudence under the

5. Such circumvention was similarly prevented in Paul v. Kirkendall, supra, and Murray v. Mossman, supra, (garnishment proceedings), Dillingham v. Tri-State Insurance Co., supra, (assignment of the claim), Duncan v. Lumberman's Mutual Casualty Co., supra, (involuntary joining of insured as plaintiff). See also Keeton, supra, which arrives at the same conclusion, viz., that the injured third party has no cause of action for the insurer's bad faith refusal to settle, and he should not be allowed to do indirectly what he cannot do directly.

6. See Farmers Ins. Ex. v. Henderson, 82 Ariz. 335, 313 P.2d 404.

circumstances applied in this, as it is in other areas of the law. This entails an awareness of the facts that the nature of the risks and the extent of liability under an insurance policy are based on premiums which should be correlated to the legitimate costs of the insurance, including among other things, the reserves necessary to cover the exposure to liability. It is therefore essential that the provisions of the contract be given effect and that the company have a reasonable latitude of discretion to decide whether it will accept a proposed settlement. Otherwise the policy limit would mean nothing and it would be all but impossible to determine the correct amount of premiums to be charged and the reserves necessary to cover potential losses.

■ While the expressions of courts have varied somewhat as to the duty of insurance companies with respect to making and accepting proposals of settlement to protect its insured,[7] we believe that the best view is that it must act in good faith and be as zealous in protecting the interests of its insured as it would in looking after its own.[8] Whether it discharges that duty may depend upon various considerations including the certainty or uncertainty as to the issues of liability, injuries, and damages.

■ What we have said above about not equating bad faith with mere failure of the insurance company to accept an offer to settle below the policy limits, prompts this comment on the defendant's contention that the trial court's instruction No. 12 was susceptible of that interpretation. It stated:

The *only issue* before you is whether or not the defendant is liable to plaintiffs * * * by reason of the fact that the defendant was *guilty of bad faith in that it failed to settle the Soliz claim prior to trial when it could do so* for $9,000 or, when that offer was withdrawn, at the trial, *it failed to settle* before the jury returned the verdict, for $10,000.

Due to the disposition we have made of this action it is not necessary to determine whether this instruction by itself would constitute prejudicial error. But there is at least the possibility that a jury might take it to mean, as the defendant contends, that if the jury believed it could have settled the Soliz claim prior to trial for $9,000, and failed to do so, that it was

7. For comparison of bad faith and negligence standards, see 6 Am.Jur., Proof of Facts, p. 426, and cases cited.

8. See Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W.2d 785; Allen, "What's New In The Law," 53 American Bar Association Journal 760 (1967).

guilty of bad faith, which lack of clarity should be guarded against.

Reversed. Any further proceedings to be not inconsistent with this opinion. Costs to defendant (appellant).

CALLISTER, TUCKETT and HENRIOD, JJ., and ALLEN B. SORENSEN, District Judge, concur.

ELLETT, J., not participating.