Pat Christine SAVAGE, Plaintiff and Petitioner,

v.

EDUCATORS INSURANCE COMPANY, a Utah corporation, Defendant and Respondent.

No. 940254.

Supreme Court of Utah.

Nov. 30, 1995.

John Preston Creer, Salt Lake City, for plaintiff.

Samuel D. McVey, Stuart F. Weed, Salt Lake City, for defendant.

Dennis V. Lloyd, Murray, and Sandra N. Dredge, Gerald J. Lallatin, Provo, for Workers' Compensation Fund.

ZIMMERMAN, Chief Justice:

Pat Christine Savage petitioned this court for a writ of certiorari to review the court of appeals' decision in *Savage v. Educators Insurance Co.*, 874 P.2d 130 (Ct.App.), *cert. granted,* 883 P.2d 1359 (Utah 1994). In *Savage,* the court of appeals held that injured workers cannot assert a claim for lack of good faith and fair dealing against their employers' workers' compensation insurance carriers. *Id.* at 132. We affirm.

Savage was employed by the Jordan School District ("the District") as a bus driver. The District contracted with Educators Insurance Company ("Educators") to carry the District's workers' compensation insurance policy.[1] On January 25, 1987, an automobile hit the school bus Savage was driving. Savage suffered serious injuries. After a disk operation and additional treatments paid for by Educators failed to ease the back pain Savage suffered as a result of the accident, three physicians recommended that Savage have a device known as a dorsal column stimulator implanted. As permitted by its policy with the District, Educators referred Savage to Dr. Gerald Moress for an independent medical examination and evaluation of the need for the implant. Dr. Moress concluded that implanting a dorsal column stimulator would not provide relief from Savage's back problems and stated that he was unaware of any further available treatment. On the basis of Dr. Moress's examination, Educators informed Savage that except for continued psychiatric treatment, her employer's workers' compensation insurance would not pay for any additional medical treatment.

Savage disputed Educators' decision not to pay for the dorsal column stimulator and timely filed a claim with the Industrial Commission of Utah (the "Commission"). No claim had been filed theretofore because Educators had paid Savage's claims voluntarily. The matter never came on for hearing. After some months, Educators, Savage, and the

---

1. The District is actually self-insured. Under its contract with the District, Educators simply administers the District's workers' compensation claims.

Employers' Reinsurance Fund agreed to stipulated findings and an order in settlement of Savage's claim pending before the Commission. As part of that settlement, Educators agreed to pay for Savage's disputed medical expenses, including those incurred for a dorsal column stimulator.

Savage then sued Educators in the district court, alleging a breach of the covenant of good faith and fair dealing by Educators in processing her claim and seeking consequential and punitive damages. Educators moved to dismiss, which prompted Savage to file an amended complaint. The amended complaint alleged breach of contract, breach of the covenant of good faith and fair dealing, intentional infliction of severe emotional distress, tortious or bad faith conduct, breach of fiduciary relationship, and interference with a protected property interest. Educators again filed a motion to dismiss, which the trial court granted. The court entered a final order dismissing Savage's amended complaint with prejudice.

Savage appealed the dismissal to this court, and we poured the appeal to the court of appeals. The court of appeals affirmed on the ground that Savage lacked the privity of contract with Educators necessary to support an action for breach of the covenant of good faith and fair dealing in adjusting her claim.[2] *Savage,* 874 P.2d at 132. The court of appeals noted that the issue before it had already been · addressed in *Pixton v. State Farm Mutual Automobile Insurance Co.,* 809 P.2d 746 (Utah Ct.App.1991). In *Pixton,* an injured motorist attempted to recover from the negligent driver's insurance company, State Farm. In denying the injured motorist a cause of action against State Farm for violating the covenant of good faith and fair dealing in handling the claim, the court of appeals recognized that the "duty of good faith and fair dealing [is] a contractual duty running from the insurer to its insured." *Id.* at 749. The court of appeals emphasized that " '[i]n order to maintain an action under a contractual theory of insurer bad faith, the parties must be in privity of contract at the time of the alleged wrong.' " *Id.* (quoting *Amica Mut. Ins. Co. v. Schettler,* 768 P.2d 950, 958 (Utah Ct.App.1989)). The plaintiff was not in privity and was denied the right to bring the claim. *Id.* at 749–51.

In light of its decision in *Pixton,* the court of appeals in the instant case held:

> In the present case, Ms. Savage is a third-party claimant against Educators. Consequently, Ms. Savage and Educators share no privity of contract; rather, that privity runs between Educators and the District. Therefore, given the holding of *Pixton,* and the cases cited therein, we affirm the trial court's ruling.

*Savage,* 874 P.2d at 132. We granted certiorari.

◾ We first state the appropriate standard of review. We granted Savage's petition for a writ of certiorari to determine whether there exists in Utah a remedy at law for an injured employee against a workers' compensation insurance carrier for breach of the contractual covenant of good faith and fair dealing in adjusting a workers' compensation claim.[3] "Because we are reviewing only legal questions, we accord the conclusions of the court below no particular defer-

2. In a footnote, the court of appeals noted, "Savage raised three other issues on appeal, but briefed only one of the three. We believe all three issues are without merit and do not address them." *Savage v. Educators Ins. Co.,* 874 P.2d 130, 131 n. 2 (Ct.App.), *cert. granted,* 883 P.2d 1359 (Utah 1994).

3. In her petition for a writ of certiorari, Savage listed the following as the sole issue presented for review: "Is there a remedy at law against a workers [sic] compensation insurance carrier for bad faith adjusting of a workers [sic] compensation claim in the state of Utah by an injured worker?" We construe this as raising the issue of an action for breach of the covenant of good faith and fair dealing which inheres in every contract. *See Beck v. Farmers Ins. Exch.,* 701 P.2d 795, 798 (Utah 1985). In her brief to this court, however, Savage raises the following additional issues: (i) Can an injured employee sue her employer's workers' compensation insurer for intentional infliction of emotional distress? and (ii) must a district court deem the material allegations in the complaint true for the purposes of a motion to dismiss? We decline to consider these issues because they were not set forth in the petition for a writ of certiorari. Utah R.App. P. 49(a)(4) ("Only the questions set forth in the petition or fairly included therein will be considered by the Supreme Court.").

ence but review them for correctness." *Anesthesiologists Assoc. v. St. Benedict's Hosp.*, 884 P.2d 1236, 1238 (Utah 1994).

We conclude, as did the court of appeals, that an action for breach of the covenant of good faith and fair dealing may be brought only by a party to the insurance contract. This conclusion flows naturally from the decisions of this court in *Beck v. Farmers Insurance Exchange*, 701 P.2d 795 (Utah 1985), and *Ammerman v. Farmers Insurance Exchange*, 430 P.2d 576 (Utah 1967).

We note as background that this court has analyzed the relationship between an insurer and its insured in two different contexts—first-party and third-party insurance policies:

> We use the term "first-party" to refer to an insurance agreement where the insurer agrees to pay claims submitted to it by the insured for losses suffered by the insured.... In contrast, a "third-party" situation is one where the insurer contracts to defend the insured against claims made by third parties against the insured and to pay any resulting liability, up to the specified dollar limit.

*Beck,* 701 P.2d at 798 n. 2.

In *Ammerman,* we recognized a tort cause of action for breach of an insurer's obligation to bargain properly in the context of a third-party insurance relationship. We concluded that insureds have a right to expect their insurers to represent the insureds' interests by acting reasonably and in good faith in settling third-party claims against insureds and that under traditional agency principles, the insurer's contractually created duty to its insured was a fiduciary one, a breach of which sounded in tort. *Ammerman,* 430 P.2d at 578–79. We reached this conclusion because of the basic nature of the third-party insurance relationship. We have stated:

> In a third-party situation, the insurer controls the disposition of claims against its insured, who relinquishes any right to negotiate on his own behalf. An insurer's failure to act in good faith exposes its insured to a judgment and personal liability in excess of the policy limits. In essence, the contract itself creates a fiduciary relationship because of the trust and reliance placed in the insurer by its insured. The insured is wholly dependent upon the insurer to see that, in dealing with claims by third parties, the insured's best interests are protected. In addition, when dealing with third parties, the insurer acts as an agent for the insured with respect to the disputed claim. Wholly apart from the contractual obligations undertaken by the parties, the law imposes upon all agents a fiduciary obligation to their principals with respect to matters falling within the scope of their agency.

*Beck,* 701 P.2d at 799–800 (citations omitted) (analyzing *Ammerman* ).

Although in *Ammerman* we adopted a tort remedy in the context of the third-party insurance contract because of the fiduciary nature of the relationship created by the contract, we have specifically rejected the tort-based approach in the first-party context where the relationship created by the insurance contract is not a fiduciary one. In *Beck,* we discussed the nature of the duty of good faith and fair dealing that exists in a first-party insurance contract. We noted that the factors which had led us to adopt a tort-based remedy in the third-party context were absent in first-party insurance contracts:

> In the first-party situation ... the reasons for finding a fiduciary relationship and imposing a corresponding [fiduciary] duty are absent. No relationship of trust and reliance is created by the contract; it simply obligates the insurer to pay claims submitted by the insured in accordance with the contract. Furthermore, none of the indicia of agency are present.

*Id.* at 800 (citation omitted). Instead, we concluded that "as parties to a contract, the insured and the insurer have parallel obligations to perform the contract in good faith, obligations that inhere in every contractual relationship." *Id.* at 801. We noted that an insurer must "refrain from actions that will injure the insured's ability to obtain the benefits of the [insurance] contract" and reasoned that such performances were what the insured had "bargained and paid for, and the insurer has the obligation to perform them" or be liable for damages sustained as a result of the breach. *Id.*

In so holding, we specifically refused to find that a breach of the implied contractual covenant of good faith and fair dealing gave rise to a tort claim, as some states had held. Rather, we found it actionable only as a contractual breach. *Id.* at 800.

■ In the present case, we conclude that Savage cannot recover under either *Ammerman* or *Beck*. Taken together, *Beck* and *Ammerman* demonstrate that the duty of good faith and fair dealing is a contractual covenant, one that arises solely as an incident to contractual obligations owed by an insurer to its insured. Even though the remedy set out in *Ammerman* sounds in tort because the relationship of the contracting parties is a fiduciary one while that in *Beck* is purely contractual, both first- and third-party claims arise only because of the contractual relationship of the parties. *See Broadwater v. Old Republic Sur.*, 854 P.2d 527, 535 (Utah 1993) ("Under both *Beck* and *Ammerman*, the duty of an insurer to deal fairly is derived from the insurance contract."). Because Savage has no contractual relationship with Educators, she has no cause of action against it for breach of the covenant of good faith and fair dealing. This conclusion is consistent with the commentators and the great majority of courts in other jurisdictions that have confronted the issue. *See Broadwater*, 854 P.2d at 535–36 (collecting cases); *Pixton*, 809 P.2d at 750 (collecting cases); 14 George J. Couch, *Couch on Insurance 2d* § 51:136 (rev. 2d ed. 1982) ("The duty to exercise due care or good faith is owed to the insured and not to a third party.").[4]

In an effort to distinguish her case from those cited above, Savage asserts, without any legal analysis, that she is entitled to bring a claim against Educators for "bad faith" adjusting of a claim under the provisions of section 31A–22–1004 of the Utah Code. Section 31A–22–1004 provides:

All workers' compensation insurance policies shall contain a provision that employees may enforce, in their own names, the liability of the insurer.

Utah Code Ann. § 31A–22–1004. Apparently, it is Savage's contention that this provision places her in a contractual relationship with Educators.

We conclude that Savage reads too much into this provision. Section 31A–22–1004 does not create a new cause of action for employees against workers' compensation insurers but instead creates a process whereby an injured employee can deal directly with an insurer to enforce the preexisting liability of the insurer under its policy with the employer to pay workers' compensation benefits. Section 31A–22–1004 does not purport to create any new or expanded liability for the insurer. Indeed, to read so much into the vague reference to "the liability of the insurer" would do violence to the carefully crafted structure of the Workers' Compensation Act. Read as we do today, section 31A–22–1004 furthers the primary goal of the workers' compensation system—to provide the injured employee a quick and easy way to recover statutory remedies for injuries which occur on the job—by allowing the injured employee to deal with the party that will pay for the injuries, the insurer, instead of going through the facade of suing the employer for benefits due.

In addition, if Savage's sweeping construction of section 31A–22–1004 were adopted and by reason of that section Educators were deemed to owe Savage a contractual duty of good faith and fair dealing, Educators would have an unresolvable conflict between its contractually based duty to the District and its so-called "contractual" duty to Savage. An insurer cannot be expected to zealously protect the interests of two parties with dia-

---

**4.** In holding that no duty of good faith and fair dealing is imposed upon an insurer running to a third-party claimant such as Savage, we do not foreclose the possibility that such a claimant could state a cause of action for an independent tort. *See Broadwater v. Old Republic Sur.*, 854 P.2d 527, 536 (Utah 1993); *Beck*, 701 P.2d at 800 n. 3. For example, the law of this state recognizes a duty to refrain from intentionally

causing severe emotional distress to others. *Samms v. Eccles*, 11 Utah 2d 289, 358 P.2d 344 (1961). Thus, intentional and outrageous conduct by an insurer against a third-party claimant could conceivably result in separate tort liability. As we indicated earlier, however, because Savage did not raise this issue in her petition for a writ of certiorari, we will not consider it here.

metrically opposed interests. *Cf. Beck,* 701 P.2d at 799; *Ammerman,* 430 P.2d at 578–79.

More important, recognizing a cause of action in favor of employees against an insurer for the manner in which it adjusted a claim is inconsistent with the workers' compensation scheme and could do substantial harm to the workers' compensation system as a whole. As the Florida Court of Appeals stated:

> "[B]eyond the legalistic objection to appellant's position, we must point out that if delay in medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration. In the practical operation of the plan, minor delays in getting medical service, such as for a few days or even a few hours, caused by a carrier, could become the bases of independent suits, and these could be many and manifold indeed. The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen's compensation could thereby be partially nullified."

*Sullivan v. Liberty Mut. Ins. Co.,* 367 So.2d 658, 660–61 (Dist.Ct.App.) (quoting *Noe v. Travelers Ins. Co.,* 172 Cal.App.2d 731, 342 P.2d 976, 979, 980 (Dist.Ct.App.1959)), *cert. denied,* 378 So.2d 350 (Fla.1979).

We observe that the workers' compensation system contemplates the situation where a claim for medical benefits is denied by the workers' compensation insurer. An employee who disagrees with the denial of benefits can apply for a hearing with the Industrial Commission. Utah Admin.Code R568–1–4(A). Thus, the workers' compensation system provides an efficient and definite remedy to employees who disagree with the decision of a workers' compensation insurer. It is important to note that Savage did, in fact, take advantage of this remedy. After Educators decided not to pay for the dorsal column stimulator, Savage filed a timely claim with the Industrial Commission. The matter never came on for hearing, however, because Savage and Educators agreed to stipulated findings and an order in settlement of the dispute. As part of that settlement, Educators agreed to pay for *all* of Savage's disputed medical expenses, including those incurred for a dorsal column stimulator.

Furthermore, our decision today does not give workers' compensation insurers free rein to act in a dilatory manner in resolving the claims of injured employees. Both the legislature and the Commission have provided penalties to be imposed where an insurer or employer delays payment without good cause. Rule 568–1–14(C) of the Utah Administrative Code provides:

> Failure to make payment without good cause shall result in referral of insurance companies to the Insurance Department for appropriate disciplinary action and may be cause for revocation of the Certificate of Self–Insurance from self-insured employers.

Utah Admin.Code R568–1–14(C). These actions would have drastic consequences for the insurer and the self-insurer. *See* Utah Code Ann. § 35–1–46(2) (providing that court may enjoin the further operation of an employer's business until that employer secures payment of benefits as required by this section). Furthermore, the Utah Code provides:

> If any employer, employee or other person violates any provision of this title, or does any act prohibited hereby, or fails or refuses to perform any duty lawfully imposed, or fails, neglects or refuses to obey any lawful order given or made by the commission, or any judgment or decree made by any court in connection with the provisions of this title, such employer, employee or other person shall be guilty of a misdemeanor.

Utah Code Ann. § 35–1–39.

Because Savage is not in privity with Educators, she has no cause of action against Educators for so-called "bad faith" adjusting of her workers' compensation claim. The court of appeals is affirmed.

HOWE and RUSSON, JJ., concur in Chief Justice ZIMMERMAN's opinion.

DURHAM, Justice, dissenting:

The question before the court is whether an employee who is covered under the Utah Workers' Compensation Act ("Act") may assert a separate claim in the courts against her company's workers' compensation insurance carrier for alleged acts of bad faith which occurred during the processing and payment of her claim. Because I conclude that our case and statutory law support recognition of such an action, I respectfully dissent.

The majority relies on our holding in *Beck v. Farmers Insurance Exchange*, 701 P.2d 795 (Utah 1985), to "construe" Savage's claim as one "for breach of the covenant of good faith and fair dealing which inheres in every contract."[1] Having done so, the majority applies principles of contract law to hold that the lack of contractual privity between Savage and Educators Insurance Company ("Educators") prevents Savage from stating a claim for bad faith against Educators. By analyzing the claim solely under the principles of contract law espoused in *Beck*, the majority fails to give adequate deference to our prior jurisprudence in the area of bad faith claims involving the settling of insurance claims.

In *Ammerman v. Farmers Insurance Exchange*, 19 Utah 2d 261, 430 P.2d 576, 578 (1967), we held that an insured party could bring a tort cause of action against his insurance company for the company's failure to bargain in good faith with a third party. We stated that a "cause of action for bad faith, though arising because of the policy, is not, strictly speaking, an action on the policy.... [I]t is properly regarded as a separate cause of action for a wrong done to the insured by violating a fiduciary duty owed him." *Id.*, 430 P.2d at 578 (footnote omitted). We reached this conclusion, as the majority notes, because of the relationship of trust and reliance between the insurer and the insured in third-party settings. *Beck*, 701 P.2d at 799–800 (discussing *Ammerman* ). Following *Ammerman*, we held in *Beck*, without overruling the tort cause of action

acknowledged in *Ammerman*, that in first-party settings, contract law rather than tort law should apply to bad faith claims. We explained that in a first-party setting, "the reasons for finding a fiduciary relationship and imposing a corresponding duty are absent. No relationship of trust and reliance is created by the contract; it simply obligates the insurer to pay claims submitted by the insured in accordance with the contract." *Id.* at 800.

Hence, following *Ammerman* and *Beck*, bad faith claims against insurers may properly be brought as either tort or contract causes of action—the distinguishing factor being whether a relationship of trust and reliance exists between the insurer and the plaintiff such that the courts will recognize a tort-based duty of good faith and fair dealing on the part of the insurer. *Cf. Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex.1988) (bad faith claims against insurance providers may sound in tort as well as in breach of contract). Thus, in the present case, the court's focus should be the entire relationship between Savage and Educators, not simply whether the parties are in contractual privity. This accords with our recent acknowledgement, in *Broadwater v. Old Republic Surety*, 854 P.2d 527, 536 (1993), that "something other than a contractual relationship may impose a duty on an insurer to deal fairly with a third party." I would conclude that the relationship between Savage and Educators is precisely the type of relationship in which such a duty should be imposed.

The relationship between a workers' compensation insurer and an injured employee is clearly different from the relationship between an insurance company and a normal third party. In fact, some courts examining the relationship have concluded that it involves the same level of intimacy as does the relationship between an insurer and a first-party insured. *See, e.g., Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1272 (Colo. 1985) (holding that "covered employee stands in the same position as an insured in a private insurance contract"). The roots of

---

1. Savage actually stated the issue in her petition for a writ of certiorari as follows: "Is there a remedy at law against a workers [sic] compensa-tion insurance carrier for bad faith adjusting of a workers [sic] compensation claim in the state of Utah by an injured worker?"

this relationship are grounded in the purpose of workers' compensation statutes, which is to provide speedy, equitable relief to injured employees. *See State Tax Comm'n v. Industrial Comm'n,* 685 P.2d 1051, 1053 (Utah 1984); *Wilstead v. Industrial Comm'n,* 17 Utah 2d 214, 216, 407 P.2d 692, 693 (1965). Under such statutes, employees relinquish their common law claims against their employers in return for the promise that employers and their workers' compensation insurers will fairly compensate them for injuries sustained in the course of employment. From the time of injury, employees in most areas rely on workers' compensation insurers for protection from the severe financial adversity associated with disabling injuries. *Aranda,* 748 S.W.2d at 212. This reliance, combined with the exclusive control workers' compensation insurers exercise over the processing of claims, creates a considerable disparity in bargaining power. *See id.* Thus, injured employees are particularly vulnerable to delaying tactics and other bad faith acts by workers' compensation insurers. *See Scott Wetzel Servs., Inc. v. Johnson,* 821 P.2d 804, 810 (Colo.1991); *Aranda,* 748 S.W.2d at 212; *Savio,* 706 P.2d at 1273.

In addition, Utah law requires that all workers' compensation insurance policies contain a provision allowing employees to "enforce, in their own names, the liability of the insurer." Utah Code Ann. § 31A–22–1004. Thus, the insurance contract between Educators and Savage's employer requires Educators to bargain directly with Savage. This statutory provision, together with the structurally inclusive nature of workers' compensation insurance, creates a relationship of trust and reliance between injured employees and workers' compensation insurers. I would hold, as have several other courts, that this relationship places a tort-based duty on insurers to deal in good faith with injured employees. *See Savio,* 706 P.2d at 1272–74 (nature of workers' compensation insurance, combined with section of workers' compensation statute requiring that insurance policies contain clause making insurer primarily liable to employee, creates tort duty on part of insurer to deal in good faith with employee);

*see also Case v. Toshiba Am. Info. Sys., Inc.,* 7 F.3d 771, 773 (8th Cir.1993) (recognizing duty to deal in good faith in workers' compensation setting); *Hollman v. Liberty Mut. Ins. Co.,* 712 F.2d 1259, 1262 (8th Cir.1983) (same); *Southern Farm Bureau Casualty Ins. Co. v. Holland,* 469 So.2d 55, 58 (Miss. 1984) (same); *Falline v. GNLV Corp.,* 107 Nev. 1004, 823 P.2d 888, 894 (1991) (same); *Aranda,* 748 S.W.2d at 212–13 (same).

Having concluded that workers' compensation insurers owe a duty of good faith to injured employees, the question remains as to what standard of care should apply. I would conclude, as have most other courts addressing the issue, that this standard should include two elements: (1) unreasonable conduct and (2) knowledge that the conduct is unreasonable or a reckless disregard for the fact that the conduct is unreasonable. *Savio,* 706 P.2d at 1272; *Falline,* 823 P.2d at 891; *Aranda,* 748 S.W.2d at 213. The Texas Supreme Court has discussed the purpose of this standard as follows:

> The first element of this test requires an objective determination of whether a reasonable insurer under similar circumstances would have delayed or denied the claimant's benefits. The second element balances the right of an insurer to reject an invalid claim and the duty of the carrier to investigate and pay compensable claims. This element will be met by establishing that the carrier actually knew there was no reasonable basis to deny the claim or delay payment, or by establishing that the carrier, based on its duty to investigate, should have known that there was no reasonable basis for denial or delay. Under the test, carriers will maintain the right to deny invalid or questionable claims and will not be subject to liability for an erroneous denial of a claim. Carriers that breach the duty of good faith and fair dealing, however, will be subject to liability for their tortious conduct.

*Aranda,* 748 S.W.2d at 213. Thus, the need of injured employees to have their claims adjusted in good faith is balanced with the need of workers' compensation insurers to

diligently investigate claims.[2] After reviewing Savage's complaint, I would conclude that she has met the elements necessary to state a claim for bad faith. When ruling on a motion to dismiss for failure to state a claim, we "must construe the complaint in the light most favorable to the plaintiff and indulge all reasonable inferences in [her] favor." *Mounteer v. Utah Power & Light Co.,* 823 P.2d 1055, 1058 (Utah 1991). Savage's first amended complaint alleges that Educators' denial of her claim was unreasonable and that Educators acted "with a reckless disregard of a reasonable basis for denial, despite the validity of the claim." The complaint further alleges that Educators' unreasonable and intentional acts caused Savage to suffer economic, physical, and mental injuries. Under the applicable standard, I would hold that Savage has stated a claim upon which relief may be granted.

The majority warns that recognizing a cause of action in favor of injured employees such as Savage "could do substantial harm to the workers' compensation system" and could result in "many and manifold" suits. This warning, in my view, suggests a basic misunderstanding of the Workers' Compensation Act. Section 35-1-60 of the Act states that the workers' compensation scheme shall be the exclusive remedy for injuries employees sustain "in the course of or because of or arising out of *[their] employment.*" Utah Code Ann. § 35-1-60 (emphasis added). We addressed this section in *Mounteer,* 823 P.2d at 1056-58, where we held that the exclusivity provision applied only to injuries covered by the Act and thus did not prevent an employee from bringing a claim for slander in state court. After reviewing the entire Act and finding no provision for compensation for damage employees sustained as a result of defamation, we stated, "It would be an erroneous oversimplification for us to

lump together all of plaintiff's claimed damages ... and hold that since all of his damages stemmed directly or indirectly from the [accident] ..., workers' compensation should be his sole remedy." *Id.* at 1057.

Similarly, after reviewing the Act, I find no provision indicating that claims against workers' compensation insurers for bad faith in handling claims for compensation are covered by its provisions. The Act applies only to injuries arising out of the course of employment; if the injury is not contemplated by the Act, the exclusivity provision does not apply. *See id.* The basis of Savage's claim is not the industrial injury upon which her workers' compensation claim is based, but rather the injuries she suffered as a result of Educators' alleged bad faith in settling her claim. Indeed, the majority of courts addressing the issue have concluded that exclusivity provisions do not prevent injured employees from stating claims against workers' compensation insurers where the basis of the claims are intentional acts. *See Hollman,* 712 F.2d at 1262 ("The weight of the case law clearly supports causes of action for such intentional torts and does not recognize exclusivity provisions of worker's [sic] compensation statutes to be a bar to the action."); *Holland,* 469 So.2d at 58 (listing cases).[3] In addressing the contention that recognizing a cause of action for bad faith will "substantially harm" the workers' compensation system, the Colorado Supreme Court stated:

> The concern that permitting state court tort actions to proceed will produce serious and manifold conflicts between rulings of the courts of law and worker's [sic] compensation agencies arises only when the same legal issue is committed to both systems for resolution. Such overlap does not exist between our statutes and the tort of bad faith. The duty of an insurer under the [Workers' Compensation] Act to pro-

---

**2.** The majority states that requiring Educators to deal in good faith with Savage creates an "unresolvable conflict" because Educators cannot be expected to "zealously protect" the interests of both Savage and Savage's employer. I disagree. The standard I have suggested allows Educators to fully investigate employee claims but also requires them to deal in good faith with injured and vulnerable employees. As noted, Utah law requires workers' compensation insurers to deal

directly with employees—the standard I suggest simply requires them to do so in good faith.

**3.** Of the courts holding that actions for bad faith are barred by exclusivity provisions, most have found that relevant workers' compensation acts provide a specific remedy for the asserted injury. *Savio,* 706 P.2d at 1271 n. 17 (citing cases from eight different jurisdictions).

vide benefits and compensation is factually and analytically distinct from its duty to deal in good faith with claimants. . . .

*Savio,* 706 P.2d at 1270.[4] Furthermore, the duty of care standard I have proposed will not create a windfall for injured employees and will not result in a flood of litigation as the majority suggests. Injured employees will recover only if they can demonstrate that the workers' compensation insurer acted unreasonably and with knowledge of or reckless disregard for the fact that no reasonable basis existed for denying the claim. This standard places a significant burden on injured employees and protects workers' compensation insurers who deny claims in good faith. Accordingly, I would hold that section 35-1-60 does not bar Savage from bringing a claim in the courts for the alleged bad faith of Educators in settling her compensation claim.[5]

Finally, the majority states that its decision to uphold the dismissal of Savage's claim "does not give workers' compensation insurers free rein to act in a dilatory manner in resolving the claims of injured employees." As support, the majority points to portions of the Utah Code and the Utah Rules of Administrative Procedure which provide for penalties against workers' compensation insurers who withhold payment without good cause. While these penalties may deter some bad faith behavior on the part of the workers' compensation insurer, they provide no relief to injured employees who may suffer great hardship as a result of the bad faith delay or denial of their benefits. The availability of tort damages under the standards I suggest will provide relief to injured employees and further serve to deter bad faith behavior by workers' compensation insurers.

In conclusion, in the absence of an obligation to deal in good faith, workers' compensation insurers may create obstacles to payment and may indeed have economic incentives to do so. This kind of delaying tactic runs counter to the goals of the workers' compensation system and creates substantial hardships for injured employees. Accordingly, I would hold that Educators owes a duty of good faith to Savage when investigating and processing her workers' compensation claim, even though it is not in contractual privity with her. I would reverse the judgment of the Utah Court of Appeals.

STEWART, Associate C.J., concurs in Justice DURHAM's dissenting opinion.

4. The majority notes that "the workers' compensation system contemplates the situation where a claim for medical benefits is denied by the workers' compensation insurer" and that Savage took advantage of this system. It is true that Savage eventually received the medical relief she desired; however, the tort of bad faith depends on the conduct of the insurance compensation carrier regardless of the ultimate resolution of the underlying claim for compensation. *Savio,* 706 P.2d at 1270. The fact that Savage eventually received the dorsal column stimulator does not compensate her for the injuries, including pain

and suffering, allegedly resulting from Educators' bad faith.

5. In a footnote, the majority, citing *Broadwater,* 854 P.2d at 536, and *Beck,* 701 P.2d at 800 n. 3, states that it would not "foreclose the possibility" that a claimant such as Savage could state a cause of action for an independent tort under Utah law. I would go one step further to hold that Savage *has* stated a cause of action for the tort of bad faith.