*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 32**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

ESPENSCHIED TRANSPORT CORP.,
*Appellant,*

*v.*

FLEETWOOD SERVICES, INC. and WILSHIRE INSURANCE COMPANY,
*Appellees.*

No. 20160873
Filed July 5, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Paige Petersen
No. 070913289

Attorneys:

L. Rich Humpherys, Karra J. Porter, Salt Lake City, for appellant

Ben T. Welch, Amber M. Mettler, Michael A. Gehret, Salt Lake City,
for appellee Fleetwood Services, Inc.

Nelson Abbot, Provo, Robert D. Moseley, Jr., Greenville, South
Carolina, for appellee Wilshire Insurance Company

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and ASSOCIATE PRESIDING JUDGE CHRISTIANSEN
joined.

Having recused herself, JUSTICE PETERSEN does not participate
herein; COURT OF APPEALS ASSOCIATE PRESIDING JUDGE MICHELE
M. CHRISTIANSEN sat.

JUSTICE HIMONAS, opinion of the Court:

**INTRODUCTION**

¶1   Espenschied Transport Corp. has used Fleetwood Services, Inc. to procure insurance since 1982. In 2003, Fleetwood obtained an insurance policy from Wilshire Insurance Company meant to cover all of Espenschied's vehicles and trailers; the list of insured vehicles was based on a list of equipment provided by Espenschied. However, Fleetwood gave Wilshire an incorrect list not containing all the equipment Espenschied had listed, resulting in Espenschied's believing that certain equipment was covered by the insurance policy when, in reality, it was not. One of the trailers that Espenschied believed to be covered, but that was not on the policy schedule, was involved in a deadly accident, resulting in litigation. Wilshire refused to defend Espenschied in the litigation, causing Espenschied to incur attorney fees and a consent judgment; Espenschied sued Fleetwood and Wilshire under various theories of liability.

¶2   The district court concluded that Espenschied had suffered no damages and granted summary judgment to Fleetwood. Additionally, the district court granted summary judgment to Wilshire, finding that the trailer was not on Wilshire's insurance policy and Fleetwood was not Wilshire's agent. Additionally, the district court ruled that Wilshire could have no vicarious liability because Fleetwood had no liability. We affirm.

**BACKGROUND**

¶3   Espenschied was an interstate trucking company established in 1982. [1] For a majority of its existence, Espenschied used Fleetwood to procure insurance from a variety of insurers. In December 2003, Fleetwood procured a commercial lines insurance policy from Wilshire to cover Espenschied's vehicles. The policy was a scheduled vehicle policy, meaning that a vehicle must be listed on the policy to be covered. Espenschied intended to have all of its vehicles covered

---

[1] On summary judgment, we view "the facts and all reasonable inferences . . . in the light most favorable to the nonmoving party." *Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 24, 390 P.3d 314 (citation omitted).

by the policy. Wilshire listed the insured vehicles on the policy based on a list provided by Fleetwood.

¶4    On January 1, 2005, Espenschied sold or leased almost all of its assets to DATS Trucking, Inc. The leased assets consisted of ninety-three trailers. As part of the lease agreement, DATS agreed to indemnify Espenschied from and against all claims, liability, or expenses (including attorney fees) relating to the trailers. Espenschied did not cancel its insurance on the trailers.

¶5    On January 30, 2005, one of the trailers Espenschied leased to DATS killed Kimball Herrod in an accident. Mr. Herrod's family brought a wrongful death action against Espenschied and DATS. Espenschied submitted a claim to Wilshire for coverage. Although the trailer was on the list of equipment that needed to be insured that Espenschied had provided to Fleetwood, the trailer was not listed on the schedule for the policy Wilshire issued. After determining that the trailer involved in the accident was not covered by the policy, Wilshire denied the claim. Espenschied then made a claim for coverage to Fleetwood for failing to procure insurance, which Fleetwood also denied.

¶6    Espenschied defended itself in the wrongful death suit. Ultimately, Espenschied entered into a settlement agreement with the Herrods for $1.1 million; that settlement was reduced to a judgment. By the time Espenschied entered into the settlement agreement, it was no longer doing business, had formally dissolved, and had no assets other than potential claims against third parties. As part of the settlement agreement, Espenschied assigned the Herrods any claim it had against DATS (except for indemnification for attorney fees) and agreed to pursue claims against Fleetwood and Wilshire. Espenschied was not required to pay any attorney fees up front for its lawsuit against Fleetwood and Wilshire. Instead, any recovery from claims against Fleetwood and Wilshire would first be used to pay the attorney fees and costs, then the settlement amount, and any remainder would go to Espenschied. In return, the Herrods agreed that they would not pursue claims against the principles of Espenschied and would withhold collection against Espenschied's assets until the claims against Fleetwood and Wilshire were fully resolved. Additionally, Espenschied agreed to "fully pursue and prosecute all claims it may have" against Fleetwood or Wilshire and to hire the Herrods' attorney from the wrongful death suit to pursue those claims.

¶7   In defending the wrongful death suit, Espenschied incurred approximately $93,500 in attorney fees and costs. Based on the indemnity agreement, DATS paid Espenschied $90,000 for the attorney fees. Espenschied has not paid any money toward the settlement agreement. Additionally, at oral argument in this matter, Espenschied's attorney conceded that the Herrods will never be able to collect against Espenschied unless Espenschied recovers in this case because Espenschied is a defunct corporation with no assets.

¶8   Fleetwood and Wilshire moved for summary judgment. The district court concluded that Fleetwood was, "at most, . . . a contract breacher [and] . . . . would only be obligated to pay what [Espenschied] actually had to pay. . . . [which was] zero dollars." Because the district court determined that Espenschied had suffered no actual damages, it granted Fleetwood's motion for summary judgment.

¶9   The district court also granted Wilshire's motion for summary judgment. Relevant to this appeal, the district court concluded that Fleetwood was not acting as Wilshire's agent, and therefore Wilshire would not be liable for Fleetwood failing to procure insurance for the trailer. Alternatively, the district court concluded that because Fleetwood had no liability, Wilshire could have no vicarious liability for Fleetwood.

¶10  Espenschied appealed these decisions. We have jurisdiction pursuant to Utah Code section 78A-3-102(3)(j).

## STANDARD OF REVIEW

¶11 A party is entitled to "summary judgment if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." UTAH R. CIV. P. 56(a). "We review the summary judgment decision *de novo*." *Salo v. Tyler*, 2018 UT 7, ¶ 19, 417 P.3d 581 (citation omitted).

## ANALYSIS

¶12 Fleetwood and Wilshire separately moved the district court for summary judgment, and the district court granted both motions. The district court granted Fleetwood's motion for summary judgment on the grounds that Espenschied was unable to raise a dispute of material fact regarding damages. We agree with the district court and affirm.

¶13 The district court granted summary judgment to Wilshire on the four claims against Wilshire and on the theory of vicarious

liability. On appeal, Espenschied only challenges the vicarious liability determination, which was based on two alternative grounds: 1) there was no material dispute of fact that Fleetwood was Wilshire's agent and 2) Fleetwood had no liability, and therefore Wilshire could have no vicarious liability. We conclude that Espenschied failed to adequately attack the district court's decision on the vicarious liability ground and therefore affirm the district court.

## I. SUMMARY JUDGMENT FOR FLEETWOOD IS APPROPRIATE BECAUSE ESPENSCHIED DID NOT ASSERT ANY DISPUTED MATERIAL FACTS TO SUPPORT COMPENSABLE HARM

¶14 Espenschied brought claims against Fleetwood alleging both breach of contract and "breach of fiduciary and other tort duties." These claims stem from Fleetwood's failure to procure insurance on the trailer involved in the accident. An insurance agent may be obligated to procure insurance by contract or by duty. *Harris v. Albrecht*, 2004 UT 13, ¶ 30, 86 P.3d 728. An insurance agent who fails to procure insurance may be liable for breach of contract or negligence. *Id.*

¶15 In order to succeed on its claims, Espenschied must prove that it suffered damages. *See Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224 ("The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) *damages*." (emphasis added) (citation omitted)); *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 5 n.2, 275 P.3d 228 ("To assert a successful negligence claim, a plaintiff must establish that (1) defendant owed plaintiff a duty of care, (2) defendant breached that duty, and that (3) the breach was the proximate cause of (4) plaintiff's injuries or *damages*." (emphasis added) (citation omitted)).[2] The district court

---

[2] Although Espenschied brought a claim alleging both fiduciary and other tort duties, Espenschied presented no argument to us that the duty to procure insurance is in fact a fiduciary duty. We need not consider that issue because damages are an essential element of a claim for breach of fiduciary duty as well. *See Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 4, ¶ 52, 417 P.3d 95.

granted summary judgment on all of Espenschied's claims against Fleetwood because Espenschied could not "establish that it has suffered damages."

¶16 Espenschied makes two main arguments that it has suffered damages: 1) it incurred attorney fees and costs from the wrongful death suit and 2) the settlement agreement and judgment from the wrongful death suit caused compensable harm.[3] Although we agree with Espenschied's first point, and conclude that Espenschied had raised a dispute of material fact in that it had suffered $3,400 in attorney fees and costs, we disagree with Espenschied's second contention. Because Espenschied stated at oral arguments that it would be uninterested in pursuing this case for $3,400, we affirm the district court.

*A. Espenschied's Attorney Fees and Costs for the Underlying Action Constitute Actual Damages to the Extent that Espenschied Did Not Receive Indemnification from DATS*

¶17 When Fleetwood and Wilshire refused to defend Espenschied in the wrongful death suit, Espenschied had to hire an attorney at its own expense. Espenschied ultimately incurred around $93,500 in attorney fees and costs for the wrongful death suit. Based on the indemnification agreement Espenschied had with DATS, DATS indemnified Espenschied for $90,000 in attorney fees and costs.

¶18 Espenschied cites *Wilson v. IHC Hospitals, Inc.*, 2012 UT 43, 289 P.3d 369, to support its proposition that the indemnification from DATS "does not reduce or eliminate Fleetwood's liability for costs and attorney fees that Espenschied incurred in defending the [wrongful death suit]." Although Espenschied never mentions the collateral source rule, it seems that Espenschied may be attempting to invoke this rule through this one citation in its brief.

¶19 As Fleetwood points out, any argument about the collateral source rule is indeed inadequately briefed. "Appellants have the

---

[3] In its brief, Fleetwood argued that Espenschied's claim was moot because the consent judgment had lapsed. However, Espenschied argued that the consent judgment had been renewed, and Fleetwood conceded at oral arguments that the claim was not moot.

burden to clearly set forth the issues . . . and to provide reasoned argument and [valid] legal authority." *See ASC Utah, Inc. v. Wolf Mountain Resorts, L.C.*, 2013 UT 24, ¶ 16, 309 P.3d 201 (citation omitted). "[I]t is not the size of an argument that matters. Some parties adequately brief an argument in a well-crafted paragraph. Others manage to inadequately brief an argument in fifty pages." *2010-1 RADC/CADC Venture, LLC v. Dos Lagos, LLC*, 2017 UT 29, ¶ 30, 408 P.3d 313. Yet, "[a]s we have repeatedly noted, we are not 'a depository in which [a party] may dump the burden of argument and research.'" *Smith v. Four Corners Mental Health Ctr., Inc.*, 2003 UT 23, ¶ 46, 70 P.3d 904 (second alteration in original) (citation omitted). "Arguments, like gardens, take work, and a party who hopes to prevail on appeal should be willing to dig in the dirt and not expect that opposing counsel or the court will do that work for them." *A.S. v. R.S.*, 2017 UT 77, ¶ 16, 416 P.3d 465.

¶20 Because we do not consider the collateral source rule, Espenschied's damages of the attorney fees and costs from the wrongful death suit must be offset by the $90,000 indemnification from DATS. This would leave Espenschied with approximately $3,400 in damages from the attorney fees. Ordinarily, this would cause us to reverse summary judgment as Espenschied has raised a dispute of material fact to show that it has suffered compensable harm. However, at oral arguments in this matter, Espenschied's counsel stated that Espenschied would be uninterested in pursuing the case against Fleetwood for $3,400. Because, as we discuss below, Espenschied has not raised another dispute of material fact that would show any other compensable harm, we affirm the district court's grant of summary judgment to Fleetwood.

## B. The Settlement Agreement and Consent Judgment Do Not Constitute Actual Damages in This Case

¶21 Espenschied contends that the settlement agreement with the Herrods and the corresponding consent judgment constitute actual harm in this case even though Espenschied has no assets and has never had to pay any money to the Herrods. In support of its position, Espenschied makes two arguments. First, Espenschied argues that the policy considerations we announced in *Ammerman v. Farmers Insurance Exchange*, 450 P.2d 460 (Utah 1969) (*Ammerman II*), should be extended to insurance agents and brokers. Second, Espenschied claims that it suffered damages because it lost part of its claims against Fleetwood and Wilshire as part of the settlement

agreement. We disagree and affirm the district court's grant of summary judgment.

¶22 By the time Espenschied entered into the settlement agreement with the Herrods, Espenschied was a defunct corporation with no assets except for potential claims against third parties. Espenschied has never paid any money to the Herrods. And, at oral arguments, Espenschied's counsel conceded that he could not hypothesize a scenario where the Herrods would ever be able to collect against Espenschied. However, Espenschied argues that this should not matter because the policy considerations in *Ammerman II* should extend to this case.

¶23 In *Ammerman II*, we held that collection from an insured by a "judgment creditor was not a prerequisite to a cause of action against the insurer for the excess judgment." 450 P.2d at 462. We found three sound reasons to justify the adoption of this view: 1) it "prevents an insurer from benefiting from the impecuniousness of an insured who has a meritorious claim;" 2) it "negates the possibility that the insurer would be . . . less responsive to its trust duties where the insured is [un]able to pay the excess judgment" because "at worst, it would only be liable for the amount specified by the policy," which would "impair the usefulness of insurance for the poor [person];" and 3) it "recognizes that the fact of entry of the judgment itself against the insured constitutes a real damage to him because of the potential harm to his credit rating." *Id.* (first alteration in original) (citations omitted) (internal quotation marks omitted).

¶24 These policy considerations make sense in the context of the cause of action at issue: breach of the insurer's fiduciary duty to defend the insured in the third-party context. *See Ammerman v. Farmers Ins. Exch.*, 430 P.2d 576, 578 (Utah 1967) *(Ammerman I)*. In *Ammerman I*, we recognized that an insurer has a fiduciary duty to "act in good faith and be as zealous in protecting the interests of its insured as it would in looking after its own." *Id.* at 579 (citation omitted).

¶25 Espenschied argues that an insurance agent or broker should be treated like an insured. But we have declined to extend an insurer's fiduciary duty to first-party insurance claims. *See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 800 (Utah 1985). And Espenschied has not convinced us that the policy considerations behind recovery for breach of an insurer's fiduciary duty to defend should extend to a breach of contract or duty to procure insurance.

¶26 These policy considerations do not all translate to insurance agents and brokers. A contract breacher is required "to compensate the nonbreaching party for actual injury sustained."[4] *Trans-Western Petroleum, Inc. v. U.S. Gypsum Co.*, 2016 UT 27, ¶ 15, 379 P.3d 1200 (citation omitted) (internal quotation marks omitted). Although this may mean that a contract breacher benefits from the impecuniousness of the nonbreaching party, the other methods of monetizing a judgment, *see infra* ¶ 29, allay any of these concerns. And if the nonbreaching party has not sustained any actual injury because they have not and will never pay the judgment, there should be no contractual liability. *See TruGreen Cos., L.L.C. v. Mower Bros.*, 2008 UT 81, ¶ 19, 199 P.3d 929 (recognizing the value of efficient breach).

¶27 Moreover, an insurer's trust duties become most relevant when an insured has a claim under the insurance because "a conflict of interests may exist." *Ammerman I*, 430 P.2d at 578. Our holding in *Ammerman II* removed the insurer's perverse incentive to breach its trust duties at the time a claim is filed because there would otherwise be no financial downside to the insurer who "would only be liable for the amount specified by the policy" even if it breached its duties and there would be a potential financial upside. 450 P.2d at 462. An insurance agent or broker does not have the same perverse incentive to breach its contract or duty to procure insurance. The agent's breach would occur when there is significant financial downside (a claim for breach of contract or negligence) with little to no financial upside (the agent must only find an insurer willing to cover the risks).

---

[4] In its ruling, the district court found that "Fleetwood's status is, at most, that of a contract breacher." We recognize that Espenschied may have a claim against Fleetwood for either breach of contract or for negligence. However, Espenschied has not challenged the district court's conclusion or argued to us that the damages available for breach of a duty to procure insurance should be different than the damages available for breach of a contract to procure insurance. We therefore do not opine in this case whether an unexecuted judgment that cannot be recovered under can be considered damages for a breach of a duty to procure insurance.

¶28 However, entry of the judgment itself may constitute real harm for which an insurance agent or broker may be held liable. *See Steele v. Hartford Fire Ins. Co.*, 788 F.2d 441, 450 (7th Cir. 1986) ("[E]ven an unexecuted judgment can cause an injury, present or future, that can be monetized."). But this real damage does not exist in a vacuum, and we will not presume it exists. Instead, it is up to the plaintiff to establish that it has suffered harm that can be monetized, such as harm to its credit rating or reputation, loss of business opportunities, or even being forced into bankruptcy.

¶29 An insurance agent or broker is not an insurer who has breached its fiduciary duty to defend. And we do not believe that the policy considerations that apply to an insurer's breach of its duty also apply wholesale to an insurance agent or broker. Therefore, we refuse to extend *Ammerman II* outside of the context of an insurer's breach of its fiduciary duty to defend. However, we do not believe that it is impossible to monetize an unexecuted judgment, and if Espenschied is able to show a dispute of material fact of such harm, summary judgment would be inappropriate.

¶30 Because Espenschied has never and will never pay money to the Herrods, the only theory of harm Espenschied puts before us (aside from the attorney fees and costs from the wrongful death suit, discussed above) is that it lost part of its claims against Fleetwood and Wilshire because it would be required to use any judgment against Fleetwood or Wilshire to pay the Herrods.

¶31 Espenschied has failed to convince us that its partial loss of claims against Fleetwood or Wilshire would constitute actual injury. To this day, Espenschied has not paid any money to the Herrods. If Espenschied does not recover against Fleetwood or Wilshire based on the settlement agreement and consent judgment, Espenschied will not suffer any actual injury because it will never have any assets to pay the Herrods. However, if Espenschied does recover against Fleetwood or Wilshire based on the settlement agreement and consent judgment, Espenschied would then be obligated to pay the money to the Herrods and would suffer an actual injury. We decline to conclude that a party has suffered an actual injury if their injury

would only exist if they were successful in the lawsuit to recover for that injury.[5]

¶32 Because Espenschied has failed to show a material dispute of fact of damages, other than the potential $3,400 in attorney fees and costs it stipulated was not worth pursuing alone, we affirm summary judgment for Fleetwood.

## II. WILSHIRE WAS ENTITLED TO SUMMARY JUDGMENT BECAUSE ESPENSCHIED HAS NOT SHOWN IT CAN RECOVER UNDER VICARIOUS LIABILITY

¶33 The district court granted summary judgment for Wilshire on Espenschied's four causes of action and separately on the theory of vicarious liability. On appeal, Espenschied only attacks the district court's decision to grant summary judgment to Wilshire based on vicarious liability. The district court granted summary judgment on this theory for two alternative reasons: 1) there was no dispute of material facts that could show Fleetwood was Wilshire's agent and 2) because Fleetwood has no liability, Wilshire cannot have vicarious liability.

¶34 In its brief, Espenschied recognizes that these were alternative grounds for the district court's decision. Before us, Espenchied makes three arguments for why the district court erred: 1) there was a dispute of material fact of agency, 2) Wilshire should be held vicariously liable for Fleetwood's breach of its duty to procure insurance, and 3) Wilshire is bound by Espenschied's reasonable reliance on Fleetwood's representations that the policy would cover the trailer.[6]

---

[5] Importantly, we affirm the district court's grant of summary judgment to Wilshire. *See infra* ¶ 37. Therefore, Espenschied's potential loss of some recovery under its claim against Wilshire creates no harm for which Fleetwood must compensate Espenschied.

[6] In its statement of issues presented for review, Espenschied included the following issue: "Did the trial court err by ruling as a matter of law that there could only be coverage under the Wilshire insurance policy if the trailer in question was specifically named in the policy?" Espenschied provided no other briefing on this issue so we do not consider it. *See supra* ¶ 19 (refusing to consider inadequately briefed argument).

¶35 We do not need to reach whether there was a dispute of material fact of agency because we find Espenschied's two other arguments insufficient. As set forth above, *see supra* ¶ 32, we affirm the district court's grant of summary judgment to Fleetwood. Espenschied has not provided any argument that Wilshire should be vicariously liable for Fleetwood's breach of contract or duty to procure insurance if Fleetwood itself is not liable. Nor has Espenschied argued that a different damages analysis should apply to Wilshire than the one that applies to Fleetwood. Therefore, we conclude that Espenschied cannot be successful under a theory of vicarious liability.

¶36 Espenschied is similarly unable to prevail on its reasonable reliance argument. "An insurance company may be vicariously liable for the tortious conduct of its agent, or it may directly incur tort liability by imputation of the agent's knowledge." *Allen v. Prudential Prop. & Cas. Ins. Co.*, 839 P.2d 798, 806 n.16 (Utah 1992) (citation omitted). It is unclear whether Espenschied's argument sounds in vicarious liability or direct liability. To the extent that Espenschied's reasonable reliance argument is grounded in vicarious liability, it must fail because Espenschied loses on the vicarious liability ground. *See supra* ¶ 35. If, instead, the reasonable reliance argument sounds in direct liability, it must fail because Espenschied has not attacked this ground. *See Kendall v. Olsen*, 2017 UT 38, ¶ 9, ___P.3d___ (holding that a party's failure to challenge an independent basis for dismissal "leaves us with no basis for reversal and thus no choice except to affirm"). A principal's vicarious liability for one of its agent's acts and a principal's direct liability for its own acts, which were committed with the agent's imputed knowledge, "are separate legal questions." *Wardley Better Homes & Gardens v. Cannon*, 2002 UT 99, ¶ 19, 61 P.3d 1009. Espenschied has not argued that the district court's independent determination that Wilshire could not be held vicariously liable for Fleetwood's actions was erroneous because it only considered one of the two routes of liability agency creates. Espenschied's failure to attack this independent ground "leaves us with . . . no choice except to affirm." *Kendall*, 2017 UT 38, ¶ 9.

¶37 We therefore affirm the district court's grant of summary judgment to Wilshire.

**CONCLUSION**

¶38 We affirm the district court's grant of summary judgment to Fleetwood because Espenschied was unable to raise a dispute of material fact of damages. Similarly, we affirm the district court's

grant of summary judgment to Wilshire because Espenschied failed to argue why Wilshire should have vicarious liability when Fleetwood has no liability.

————————