*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2014 UT 18**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of JERE B. RENEER,

JERE B. RENEER,
*Petitioner,*

*v.*

UTAH STATE BAR,
*Respondent.*

No. 20120760
Filed May 23, 2014

Original Proceeding in this Court

Attorneys:

Jere Reneer, Provo, pro se petitioner

Todd Wahlquist, Salt Lake City, for respondent

JUSTICE DURHAM authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE NEHRING,
JUSTICE PARRISH, and JUSTICE LEE joined.

JUSTICE DURHAM, opinion of the Court:

### INTRODUCTION

¶1 Attorney Jere Reneer appeals the decision of the Utah
Supreme Court's Ethics and Discipline Committee (discipline
committee) to privately admonish him for violating rules 1.8(f) and
8.4(a) of the Utah Rules of Professional Conduct. We hold that the
Office of Professional Conduct (OPC) did not produce substantial
evidence that Mr. Reneer violated rule 1.8(f) by failing to obtain the
informed consent of his client to receive compensation from a third
party. Moreover, rule 8.4(a) may not be used as an independent
ground for attorney discipline. We therefore reverse the discipline
committee's order admonishing Mr. Reneer.

### BACKGROUND

¶2 After the police arrested Thomas Broude for criminal
trespass and aggravated assault, Joe Scheeler at the Utah Legal
Group (ULG) contacted Mr. Broude through the mail about legal
representation. Mr. Scheeler is not an attorney, and ULG is not a law

firm, but rather a marketing company that recruits paying clients for Utah attorneys. Mr. Broude spoke with Mr. Scheeler and then requested that his mother, Judy Carey, also speak with Mr. Scheeler because she would be paying for the legal representation. Ms. Carey met with Mr. Scheeler and signed a contract with ULG. The contract specified that in exchange for Ms. Carey's agreement to pay $6,000, ULG would find and retain an attorney for Mr. Broude. The contract stated ULG would pay all attorney's fees, monitor Mr. Broude's cases, and resolve disputes between the attorney and the client.

¶3 Ms. Carey incorrectly believed that ULG was a law firm that would represent her son. Ms. Carey alleged that ULG's ads represented that it would "kick ass" and could "get things accomplished that no other firm could." Ms. Carey claimed that Mr. Scheeler told her that without ULG's help, her son would face extensive jail time, probation, and fines, but that if she retained ULG, Mr. Broude would avoid jail. Ms. Carey also alleged that when she expressed her concern about ULG's high fee and mentioned the possibility of a public defender, Mr. Scheeler told her that if she did not want to see her son go to jail, she should think twice about getting a public defender.

¶4 After Ms. Carey signed the contract, ULG contacted Mr. Reneer, and he agreed to represent Mr. Broude for a flat fee of $2,500. Mr. Reneer was not aware of the amount Ms. Carey agreed to pay ULG. Neither Ms. Carey nor Mr. Broude ever signed a separate fee agreement with Mr. Reneer. Mr. Reneer and an associate at his firm, Reneer & Associates, met with Mr. Broude to discuss his two cases, requested discovery from the prosecutors, and represented Mr. Broude at several pretrial hearings. Despite Mr. Broude's prior criminal history, Reneer & Associates negotiated a plea in abeyance for the criminal trespass charge and a plea agreement on the aggravated assault charge, lowering the charge from a third-degree felony to a class A misdemeanor. The court sentenced Mr. Broude to 365 days in jail on the reduced charge, but suspended all but 120 days of the sentence. Mr. Broude's jail sentence was 60 days less than the 180 days recommended by Adult Probation and Parole in the presentence report.

¶5 Due to Mr. Scheeler's alleged promise that Mr. Broude would not receive a jail sentence, Ms. Carey was unhappy with this result. Ms. Carey wrote a letter to Mr. Scheeler expressing her discontent and stating her intention to stop making payments toward the remaining debt she still owed to ULG. Ms. Carey then submitted a complaint against Mr. Reneer to the Utah State Bar

Consumer Assistance Program. The complaint incorrectly referred to Mr. Reneer as an attorney working for the law firm "Utah Legal Group." In her complaint, Ms. Carey sought a waiver of the $1,600 she still owed ULG, as well as a $1,000 refund from the money she had already paid to ULG.

¶6    The OPC investigated Ms. Carey's complaint and concluded that Mr. Reneer may have violated (1) rule 1.5(b) of the Utah Rules of Professional Conduct, which requires that a lawyer communicate the scope of representation and the basis and rate of fees to the client; (2) rule 1.8(f), which prohibits a lawyer from accepting compensation from one other than the client without the client's informed consent to do so; (3) rule 5.4(a), which prohibits a lawyer from sharing legal fees with a nonlawyer; and (4) rule 8.4(a), which defines professional misconduct for a lawyer. The OPC then referred the matter to a screening panel of the discipline committee for further investigation.

¶7    The screening panel held a hearing to investigate the potential violations identified by the OPC. Ms. Carey, Mr. Reneer, and an associate at Mr. Reneer's firm all testified, but Mr. Broude did not attend the hearing. The screening panel found that Mr. Reneer violated rules 1.8(f) and 8.4(a) because he failed to obtain informed consent from Mr. Broude to receive compensation from Ms. Carey or ULG. The panel determined that Mr. Reneer's conduct caused little or no injury and recommended that he be privately admonished for the violations.

¶8    Mr. Reneer filed an exception to the screening panel's recommendation with the discipline committee. Because Mr. Reneer did not request a new hearing, the discipline committee made its determination based on the record before the screening panel. The discipline committee concluded that Mr. Reneer provided competent representation to his client and that the outcome was reasonable, but determined that substantial evidence supported the screening panel's findings that Mr. Reneer violated rules 1.8(f) and 8.4(a). The discipline committee issued an order privately admonishing Mr. Reneer for the violations. Mr. Reneer appealed the discipline committee's ruling.

## STANDARD OF REVIEW

¶9    In this appeal, we review whether the disciplinary action taken against Mr. Reneer was supported by substantial evidence. In proceedings before the screening panel, the OPC bears the burden of proof to show that discipline is warranted. SUP. CT. R. PROF'L

PRACTICE 14-517(c). The party filing an exception from the screening panel's recommendation to the discipline committee has "the burden of showing that the determination or recommendation of the screening panel is unsupported by substantial evidence." *Id.* 14-510(d)(3). Finally, the party seeking review of the discipline committee's final determination in this court "shall have the burden of demonstrating that the Committee action was . . . [b]ased on a determination of fact that is not supported by substantial evidence when viewed in light of the whole record before the Court." *Id.* 14-510(f)(5). Because all of the evidence in this case was presented before the screening panel, we review the panel's findings of fact based on the evidence before it.[1]

¶10 Under our traditional substantial evidence standard of review, "[a] decision is supported by substantial evidence if there is a quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Becker v. Sunset City*, 2013 UT 51, ¶ 10, 309 P.3d 223 (internal quotation marks omitted). "Substantial evidence is more than a mere scintilla of evidence and something less than the weight of the evidence." *Id.* ¶ 21 (internal quotation marks omitted). "In conducting a substantial evidence review, we do not reweigh the evidence and independently choose which inferences we find to be the most reasonable," but merely determine if sufficient evidence exists to allow a reasonable fact-finder to arrive at a particular conclusion. *Id.* (internal quotation marks omitted).

¶11 Our review of factual determinations made during attorney discipline proceedings, however, is less deferential than under our traditional substantial evidence standard of review. *See In re Discipline of Tanner*, 960 P.2d 399, 401 (Utah 1998) ("Review of attorney discipline proceedings is fundamentally different from judicial review in other cases." (internal quotation marks omitted)).

---

[1] When the party filing an exception does not present additional evidence to the discipline committee, as in this case, the committee performs a role similar to that of an appellate court, reviewing the record of the screening panel proceedings to determine whether the panel's findings are supported by substantial evidence. SUP. CT. R. PROF'L PRACTICE 14-510(d)(1), (3). We grant no deference to the discipline committee's determination of whether substantial evidence supports the screening panel's factual findings because the discipline committee is in no better position than this court to review the record of the screening panel proceedings. *See State v. Manatau*, 2014 UT 7, ¶ 8, 322 P.3d 739.

Under Article VIII, section 4 of the Utah Constitution, "[t]he Supreme Court by rule shall govern the practice of law, including . . . the conduct and discipline of persons admitted to practice law." Thus,

> in light of our constitutional mandate and the unique nature of disciplinary actions and our knowledge of the nature of the practice of law, we accord less deference to the findings of a lower tribunal. We reserve the right to draw inferences from basic facts which may differ from the inferences drawn by the lower tribunal.

*Utah State Bar v. Jardine* (*In re Discipline of Jardine*), 2012 UT 67, ¶ 26, 289 P.3d 516 (internal quotation marks omitted); *accord In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997); *In re Knowlton*, 800 P.2d 806, 808 (Utah 1990). Under this less deferential substantial evidence standard of review, we still "presume that the [lower tribunal's] findings of fact are correct, although we may set those findings aside if they are not supported by the evidence." *Jardine*, 2012 UT 67, ¶ 26 (alteration in original) (internal quotation marks omitted).

## ANALYSIS

### I. RULE 1.8(f)

¶12  Rule 1.8(f) of the Utah Rules of Professional Conduct states that "[a] lawyer shall not accept compensation for representing a client from one other than the client unless . . . the client gives informed consent." The rules define informed consent as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." UTAH R. PROF'L CONDUCT R. 1.0(f). Informed consent is required when a third party pays a lawyer's fee "[b]ecause third-party payers frequently have interests that differ from those of the client, including interests in minimizing the amount spent on the representation and in learning how the representation is progressing." *Id.* R. 1.8 cmt. 11. "Sometimes, it will be sufficient for the lawyer to obtain the client's informed consent regarding the fact of the payment and the identity of the third-party payer." *Id.* R. 1.8 cmt. 12. Nevertheless, for consent to be fully informed, an attorney must "explain the nature and implications of the conflict in enough detail so that the parties can understand" the

conflict being waived. *Margulies ex rel. Margulies v. Upchurch*, 696 P.2d 1195, 1204 (Utah 1985).

¶13 In this case we review the screening panel's factual finding that Mr. Reneer did not obtain his client's informed consent to receive compensation from his client's mother by way of ULG. We agree that substantial evidence would support a finding that Mr. Reneer failed to secure his client's written consent. Mr. Reneer testified that it was his practice to send a letter to all new clients, informing them of the importance of attending hearings and providing all documentation relevant to their case. But the form letter makes no mention of third-party payments, and Mr. Reneer admitted that it was possible that he never sent the letter to Mr. Broude. Mr. Reneer testified that the letter was the only written communication he exchanged with a new client referred to him by ULG.

¶14 Written consent, however, is not required to comply with rule 1.8(f). The rule only requires the client's "informed consent"; it does not state that consent must be in writing. The structure of rule 1.8 confirms that a writing is not required. Two of the conflicts described in rule 1.8 explicitly require a client's written informed consent to waive the conflict. UTAH R. PROF'L CONDUCT R. 1.8(a) (business transactions with a client); *id.* R. 1.8(g) (aggregate settlement of the claims of two or more clients). Thus the omission of a written consent requirement in rule 1.8(f) must be seen as purposeful, allowing for a client's oral manifestation of consent.[2]

¶15 The screening panel received no evidence—much less substantial evidence—of the absence of Mr. Broude's oral informed consent. Testimony about the presence or absence of informed consent could have been obtained most readily from two sources: Mr. Broude or Mr. Reneer. But Mr. Broude did not provide any

testimony to the screening panel, and the panel never asked Mr. Reneer if he obtained Mr. Broude's informed consent to receive

---

[2] The comments to rule 1.8 recognize one exception. In situations where third-party payments also constitute a conflict of interest under rule 1.7, which contains an explicit written consent requirement, informed consent for the attorney to receive the payments must be in writing. UTAH R. PROF'L CONDUCT R. 1.8 cmt. 12. Because there was no allegation that the payment of attorney fees by Ms. Carey or ULG created a rule 1.7 conflict of interest, oral consent to the fee arrangement would satisfy rule 1.8(f).

compensation from a third party.[3] Mr. Reneer testified that he did not remember telling his client how much ULG promised to pay him for the representation, but rule 1.8 does not require an attorney to disclose the amount of compensation paid to the attorney by a third party. The comments to rule 1.8 suggest that if a third-party fee arrangement does not create a rule 1.7 conflict of interest, "informed consent regarding the fact of the payment and the identity of the third-party payer" may be sufficient. *Id.* R. 1.8 cmt. 12.

¶16 The OPC suggests that because Mr. Reneer did not provide evidence that he obtained his client's informed consent, the screening panel's finding that Mr. Reneer failed to do so should be upheld. Mr. Reneer, however, did not bear the burden of proving compliance with the rules of professional conduct. Rather, the OPC bore the burden of producing evidence showing that Mr. Reneer did not comply. SUP. CT. R. PROF'L PRACTICE 14-517(c) ("The burden of proof in proceedings seeking discipline . . . is on the OPC."). In the absence of testimony or other evidence on this issue, the screening panel may not presume noncompliance. Therefore the panel's finding of fact that Mr. Reneer failed to obtain his client's informed consent, as required by rule 1.8(f), is not supported by substantial evidence.

## II. RULE 8.4(a)

¶17 Mr. Reneer's alleged violation of rule 8.4(a) of the Utah Rules of Professional Conduct likewise does not support the order of admonishment. Rule 8.4(a) provides that "[i]t is professional misconduct for a lawyer to . . . violate . . . the Rules of Professional Conduct." The comments to this rule clarify that "[a] violation of paragraph (a) based solely on the lawyer's violation of another Rule of Professional Conduct shall not be charged as a separate

---

[3] In addition to the absence of any evidence that Mr. Reneer failed to obtain his client's informed consent, the screening panel heard compelling evidence that Mr. Broude impliedly consented to the third-party payments by referring his mother to ULG, asking her to pay for his defense, and subsequently accepting Mr. Reneer's services. *See* UTAH R. PROF'L CONDUCT R. 1.0 cmt. 6 ("A lawyer need not inform a client or other person of facts or implications already known to the client or other person; nevertheless, a lawyer who does not personally inform the client or other person assumes the risk that the client or other person is inadequately informed and the consent is invalid.").

violation." UTAH R. PROF'L CONDUCT R. 8.4 cmt. 1a.[4] Because Mr. Reneer's alleged violation of 8.4(a) was based upon the charge that he violated rule 1.8(f), it may not stand as an independent ground for discipline.

## CONCLUSION

¶18 Substantial evidence does not support a violation of rule 1.8(f). And rule 8.4(a) is not a basis for discipline in this case. We therefore reverse the order admonishing Mr. Reneer.

———————

[4] The discipline committee did not have the benefit of guidance from comment 1a because it was not added until after the committee made its final determination in this case. UTAH R. PROF'L CONDUCT R. 8.4.