*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 53**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

IN THE MATTER OF THE DISCIPLINE OF BRIAN W. STEFFENSEN

BRIAN W. STEFFENSEN,
*Appellant,*

*v.*

OFFICE OF PROFESSIONAL CONDUCT,
*Appellee.*

No. 20170058
Filed September 24, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Todd M. Shaughnessy
No. 110917794

Attorneys:

Billy L. Walker, Barbara Townsend, Adam C. Bevis, Salt Lake City,
for appellee

Brian W. Steffensen, Salt Lake City, for appellant

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 Brian Steffensen appeals the judgment of the district court disbarring him from practicing law for violations of the Utah Rules of Professional Conduct involving, *inter alia*, failure to file taxes. Mr. Steffensen asks this court to reverse the district court's findings of misconduct, direct that the case against him be dismissed, and vacate the sanction of disbarment. We affirm the district court's

findings of misconduct, reverse the district court's imposition of sanctions, and remand to the district court for a new sanctions determination.

**BACKGROUND**

¶2 After graduating from Stanford Law School in 1980, Mr. Steffensen became a member of the bar and began working as a lawyer in a large firm.[1] He primarily represented a major bank focused on transactional work and real estate development. He left the firm approximately seven years later, continuing to work as a lawyer in a sole proprietorship. Then, in 1995, Mr. Steffensen incorporated the first of his many professional law firms.

¶3 Mr. Steffensen repeatedly failed to maintain accounting practices that would keep his law firms viable. Mr. Steffensen acknowledges his "gross[] negligen[ce]" in "failing to file . . . employee withholding tax returns." Additionally, Mr. Steffensen opened a new law firm each time the previous one financially floundered. To date, Mr. Steffensen has incorporated five firms subsequent to his sole proprietorship. Financial trouble led to the demise of at least three previous firms,[2] with taxes left unpaid. The law firm currently in operation is AAA Law, PC.

---

[1] While we may "draw different inferences from the facts in order to make an independent determination of the correctness of the discipline the district court imposed," *In re Discipline of Lundgren*, 2015 UT 58, ¶ 9, 355 P.3d 984 (citation omitted) (internal quotation marks omitted), "we always give serious consideration to the findings and [rulings] of the [district court]," *In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997) (alterations in original) (citation omitted). As not all of the evidence afforded to the district court is before us, we establish a background that is culled from the district court's findings of fact and conclusions of law, Steffensen's own testimony in the portion of the record we do have, and the briefing before us unless otherwise noted.

[2] At the time of Mr. Steffensen's deposition in August 2013, he had bank accounts for both his fourth law firm, SB Law, PC, and his fifth, AAA Law, PC. There is little other information about SB Law, PC in the record.

¶4 Mr. Steffensen's first incorporated law firm—Brian W. Steffensen, a Professional Law Corporation (Firm #1)—operated from 1995 to 2001 and closed, resulting in an Internal Revenue Service (IRS) seizure of all assets "because of his failure to pay withholding taxes." Mr. Steffensen also had problems with the Utah State Tax Commission with Firm #1. Mr. Steffensen admits having someone apply for a withholding account number for Firm #1 in 1995. So he has known since at least 1995 that he had a responsibility to withhold money from the employees' paychecks and pay that money to the Tax Commission. He also admits to knowing that filing a return was required even if no taxes were due and claims that he filed all returns for Firm #1. And, although he filed returns, he never remitted the taxes.

¶5 Upon the heels of the IRS seizure, Mr. Steffensen established Steffensen Law, PC (Firm #2), which operated from 2002 to 2003. Operations under this firm ended due to "the exact same problems with payroll and the Tax Commission" as the first. In the same year, 2003, Mr. Steffensen started his third law firm, S Law, P.C. (Firm #3), which ceased operation in 2007 "because the financial and tax irregularities continued to exist." When Firm #3 closed, Mr. Steffensen established his next firm, SB Law, PC (Firm #4), which remained in operation until 2013. When that firm was in financial jeopardy, he established AAA Law, PC (Firm #5), Mr. Steffensen's currently operating law firm.

¶6 The Tax Commission began to scrutinize Mr. Steffensen's employee tax withholding practices in 2006 when the filing process of one of his employees was suspended and came under review by the Tax Commission because her W2 from Firm #3 did not have a state withholding tax number. The Tax Commission investigated both Mr. Steffensen's business and personal taxes. While the Tax Commission started with investigating only Mr. Steffensen's law firm listed on the questionable W2, it soon discovered several withholding accounts for other businesses and began investigating those as well.

¶7 In September 2008, the Tax Commission completed an investigation of Mr. Steffensen and recommended he be criminally charged with violating: (1) Utah Code section 76-8-1101(1)(c)(i),

Failure to File; (2) Utah Code section 76-8-1101(1)(d)(i), Willful Evasion; and (3) Utah Code section 76-6-513(2), Unlawful Dealings of Property by a Fiduciary.[3]

¶8 The Tax Commission's investigation uncovered a number of potential violations of tax law on Mr. Steffensen's part. As of July 2008, Firm #1 had an unpaid outstanding withholding tax account balance of $44,395.46. Mr. Steffensen broke seven payment arrangements regarding this balance. Regarding Firm #2, Mr. Steffensen perpetuated the same problems he had with the first firm. Additionally, Mr. Steffensen used invalid state withholding tax identification numbers, and the W2s he distributed to employees falsely declared that money had been withheld and remitted. And, as of September 2008, he still owed $48,895.17 for withholding taxes, penalties, and interest for tax years 2002–2006. Moreover, in operating Firm #3, Mr. Steffensen failed to file withholding returns for 2003 through 2006. He failed to remit withholdings for this firm's entire existence.

---

[3] It is unclear both which versions of these statutes the Tax Commission recommended Mr. Steffensen be charged under and which versions of these statutes Mr. Steffensen was ultimately charged under in May 2009. *See infra* ¶ 9. This is immaterial, however, for purposes of this appeal because the parties seem to have chosen to litigate this case under the current versions of these statutes—especially with respect to Utah Code section 76-8-1101(c)(i).

Although Mr. Steffensen was charged in 2009 for acts that occurred between 2003 and 2008, the parties chose to frame the issue both here and below in terms of the current version of Utah Code section 76-8-1101(c)(i), which was amended in May 2014. In May 2014, the Legislature changed the *mens rea* element from "intent," the *mens rea* element in the statute since at least 2001 and before any of the crimes Mr. Steffensen was charged with allegedly took place, to "knowingly and intentionally." In light of the parties' choice to consistently litigate this issue under the current version of the statute, we, too, choose to analyze the parties' claims under the current version of the statute.

¶9   In May 2009, Mr. Steffensen was charged with one count each of Failing to Render a Proper Tax Return (for tax years 2003–2008), Intent to Evade (for tax years 2003–2008), and Unlawful Dealing of Property by a Fiduciary (for years 2003–2006). On March 1, 2010, Mr. Steffensen entered into a diversion agreement with the State in which he did not admit to guilt but did admit there was probable cause for the charges against him. In that agreement, the charges were amended to an "attempt to commit a crime," UTAH CODE § 76-4-101,[4] namely "knowingly and intentionally, and without a reasonable good faith basis, fail[ing] to make, render, sign or verify any return within the time required by law," *id*. § 76-8-1101(1)(c)(i). Mr. Steffensen in turn paid all taxes along with penalties.

¶10  After receiving notice of Mr. Steffensen's criminal charges in September 2009, the Office of Professional Conduct (OPC) alleged three violations in its case against Mr. Steffensen. The first claim under rule 8.4(b) of the Utah Rules of Professional Conduct is that Mr. Steffensen engaged in criminal conduct that reflects adversely on his fitness to practice law. The second claim under rule 8.4(c) is that he engaged in dishonest conduct. And the third claim under rule 8.4(a) is that he engaged in misconduct by violating or attempting to violate the Utah Rules of Professional Conduct.[5]

¶11 The district court concluded that Mr. Steffensen violated rule 8.4(b) and (c) of the Utah Rules of Professional Conduct. The court found professional misconduct under rule 8.4(b) for "committ[ing] the criminal act [under Utah Code section 76-8-1101(1)(c)(i)] of Failing to Render a Proper Tax Return [and] . . . committ[ing] the criminal act [under Utah Code section 76-4-101] of Attempted Failing to Render a Proper Tax Return." The district

---

[4] It is likewise unclear which version of this statute Mr. Steffensen was charged with. In any event, it does not bear on our resolution of this case.

[5] The parties cite to no particular version of the Rules of Professional Conduct or the Rules Governing the Utah State Bar in their briefs here or their filings below. Accordingly, we evaluate the parties' arguments under the current rules, which contain the same language as the rules offered by the parties in their briefing.

court concluded that these "committed criminal acts," established "[b]y a preponderance of the evidence," "reflect adversely on [Mr. Steffensen's] honesty, truthfulness or fitness as a lawyer [i]n other respects."

¶12  The district court concluded that Mr. Steffensen committed professional misconduct under rule 8.4(c) because he "engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation."[6] In addition to the criminal acts under rule 8.4(b), the district court found (1) that Mr. Steffensen, "in the context of operating the law firm," failed "to remit to the Tax Commission the amounts that [his] employees were ultimately obligated to pay in their taxes," which was "dishonest;" (2) that he distributed "W2s to [his] employees stating that the tax monies had been withheld and remitted" when they had not, which constituted a misrepresentation; and (3) "that he presented [financial statements] to his bank in order to get a loan" that were in conflict with "forms he presented to the Tax Commission to obtain a financial hardship exemption" and therefore that "Mr. Steffensen's statements about his income and finances [that] he presented to the Tax Commission to receive a financial hardship exemption contained material misrepresentations."

¶13  The district court held a sanctions hearing and concluded that the violations of the Utah Rules of Professional Conduct justified the disbarment of Mr. Steffensen under Rule Governing the Utah State Bar 14-605(a)(1) and (a)(2). Mr. Steffensen appeals. We have jurisdiction pursuant to article VIII, section 4 of the Utah Constitution and Utah Code section 78A-3-102(3)(c).

**STANDARD OF REVIEW**

¶14  The Utah Supreme Court has a constitutional mandate to "govern the practice of law, including . . . the conduct and discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4. Because of this mandate, professional discipline cases form a unique subset of the cases we hear and have a unique standard of review.

---

[6] Because we find some ambiguity in the district court's written order regarding its rule 8.4(c) findings, we have turned to the court's oral ruling to resolve that ambiguity.

¶15 While we generally "presume that the [lower tribunal's] findings of fact are correct" unless clearly erroneous, in attorney discipline cases we "reserve the right to draw inferences from basic facts which may differ from the inferences drawn by the [lower tribunal]." *In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997) (alterations in original) (citations omitted). Additionally, although "we always give serious consideration to the findings and [rulings] of the [district court]," "we must treat the ultimate determination of discipline as our responsibility." *Id.* (alterations in original) (citations omitted). We therefore must "make an independent determination of the correctness of the discipline the district court imposed." *In re Discipline of Lundgren*, 2015 UT 58, ¶ 9, 355 P.3d 984 (citation omitted) (internal quotation marks omitted); *see also In re Discipline of Crawley*, 2007 UT 44, ¶ 17, 164 P.3d 1232.

## ANALYSIS

¶16 In our analysis, we first clarify the interpretation and application of rule 8.4(b) and (c) of the Utah Rules of Professional Conduct discussing violations of professional misconduct. And, finding that Mr. Steffensen did commit professional misconduct, we then turn to the imposition of sanctions for those violations to determine whether the court applied the proper standard in its sanctioning of him. On the record before us, we find that the district court erred in its imposition of sanctions for Mr. Steffensen's violations, but understandably so given the inconsistencies in the comment section of rule 8.4.[7]

### I. THE VIOLATIONS OF THE UTAH RULES OF PROFESSIONAL CONDUCT

¶17 This court regulates members of the bar both by constitutional mandate and inherent authority. UTAH CONST. art. VIII, § 4 ("The Supreme Court by rule shall govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law."); *Barnard v. Utah*

---

[7] We recognize the lack of clarity in comment [1a] for rule 8.4 of the Utah Rules of Professional Conduct regarding the imposition of sanctions and refer these issues to the rules committee for further consideration. *See infra* ¶ 51.

*State Bar*, 804 P.2d 526, 528 (Utah 1991) ("[T]he authority of this Court to regulate the admission and discipline of attorneys existed as an inherent power of the judiciary from the beginning." (citation omitted)). In order to maintain the integrity of the profession, we promulgate the Rules of Professional Practice to guide lawyers and judges in matters of discipline. In Utah,

> [a] lawyer is a representative of clients, an officer of the legal system and a public citizen having special responsibility for the quality of justice. Every lawyer is responsible to observe the law and the Rules of Professional Conduct, shall take the Attorney's Oath upon admission to the practice of law, and shall be subject to the Rules of Lawyer Discipline and Disability.

UTAH R. PROF'L CONDUCT pmbl. 1. Chapter 13 of the Supreme Court Rules of Professional Practice establishes the Utah Rules of Professional Conduct.

¶18 To assist with our regulatory responsibility, we have authorized and designated the Utah Bar Association (Bar) to administer the rules and regulations which govern the practice of law in Utah. R. GOVERNING UTAH STATE BAR 14-102. Responsibilities of the Bar include, but are not limited to, advancing "the administration of justice according to law;" "regulat[ing] and disciplin[ing] . . . persons practicing law;" "maintain[ing] integrity . . . and high standards of conduct among those practicing law;" and "promot[ing] professionalism, competence and excellence in those practicing law." *Id*. 14-202; *see also id*. 14-102. The OPC aids the Bar in performing the duties related to violations of the Utah Rules of Professional Conduct. *Id*. 14-504.

¶19 Under the Rules Governing the Utah State Bar, the OPC can bring a formal complaint charging an attorney with professional misconduct before the district court with the permission of a screening panel. *Id.* 14-511(a). When "[f]ormal disciplinary and disability proceedings" are convened, they "are civil in nature." *Id.* 14-501(c). This remains true even when, as here, questions of criminal conduct arise in finding a violation of the Utah Rules of Professional Conduct. *Id.*; *see also In re Discipline of Steffensen*, 2016 UT 18, ¶ 12, 373 P.3d 186. Such cases are also bifurcated, meaning that they are conducted in two phases: adjudication of the allegations of misconduct and, if necessary, a determination of the appropriate sanction. R. GOVERNING UTAH STATE BAR 14-511.

¶20  In these proceedings brought before the district court by the OPC, the court concluded Mr. Steffensen violated both rule 8.4(b) and (c). Mr. Steffensen challenges the admissibility of evidence that the court allowed in his adjudication hearing as well as the court's determination of his mental state. He argues that the evidence was irrelevant and prejudicial. We hold that the evidence was relevant and admissible. Mr. Steffensen also argues that the district court's determination that his actions were "knowing and intentional" was not supported by the evidence. We disagree and affirm the district court's findings of fact and conclusions of law at the adjudication hearing.

*A. Admission of Evidence and Expert Witness Challenge*

¶21 At each stage of the trial, Mr. Steffensen objected with regularity to the relevance, unfair prejudice, and admissibility of the evidence. On appeal, Mr. Steffensen challenges the admission of evidence regarding (1) his failure to file personal tax returns, (2) his failure to file corporate tax returns, (3) his personal banking records, and (4) his personal estate planning. In less than one page, he summarily claims that the admission of this evidence violated Utah Rules of Evidence 401, 403, and 404(b)(1). But Mr. Steffensen fails to expound on his arguments—he does not discuss the challenged evidence (beyond listing broad categories) or explain why that evidence was irrelevant under rule 401, unfairly prejudicial under rule 403, or admitted in violation of rule 404(b)(1).

¶22 These arguments are inadequately briefed. "Appellants have the burden to clearly set forth the issues . . . and to provide reasoned argument and [valid] legal authority." *Espenschied Transp. Corp. v. Fleetwood Servs., Inc.*, 2018 UT 32, ¶ 19, 422 P.3d 829 (alterations in original) (citation omitted). "[W]e are not a depository in which [a party] may dump the burden of argument and research." *Id.* (second alteration in original) (citation omitted) (internal quotation marks omitted).

¶23 Mr. Steffensen fails to meet these requirements. And Mr. Steffensen further does not address the district court's response to his objections—that the objections would go to the weight of the evidence, not the admissibility. The court also noted that it would "give those documents the weight that they deserve[d]," and further conceded that the court would "give counsel an opportunity to argue that [the court] should give them no weight."

¶24 With the exception of one reference to a loan application,[8] the court appears to have given very little, if any, weight to the objected-to evidence in coming to its conclusions. Based on the nature of the proceeding as a bench trial, we have little doubt that the district court only considered appropriate relevant and nonprejudicial evidence, and there is nothing in the district court's findings to indicate otherwise. *See State v. Park*, 404 P.2d 677, 679 (Utah 1965) ("[B]ecause . . . the [district] court will be somewhat more discriminating in appraising both the competency and the rulings properly to be given evidence, the rulings on evidence are looked upon with a greater degree of indulgence when the trial is to the court than when it is to the jury.").

¶25 Mr. Steffensen makes two additional challenges to the testimony of Heather Gamon, a special agent or criminal investigator for the Tax Commission. Mr. Steffensen's first challenge is that Ms. Gamon was either (1) testifying as an undisclosed expert, or, in the alternative, (2) not testifying as an expert and thereby providing testimony that violated Utah Rule of Evidence 701. Second, Mr. Steffensen argues that if Ms. Gamon were testifying as an expert, her testimony violated Utah Rule of Evidence 704(b).[9]

---

[8] We ultimately find the district court's factual finding based on this evidence deficient and reject it as a basis for finding a violation of Utah Rule of Professional Conduct 8.4(c). *See infra* ¶¶ 38–45. Thus we do not rely on it to advance the district court's conclusion that Mr. Steffensen committed professional misconduct under rule 8.4(c). And, therefore, any error concerning the loan application is harmless.

[9] Utah Rule of Evidence 704(b) provides that, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Lawyer discipline cases "are civil in nature," not criminal, a point we highlighted in Mr. Steffensen's previous appeal in this case. R. GOVERNING UTAH STATE BAR 14-501(c); *see also In re Discipline of Steffensen*, 2016 UT 18, ¶ 12, 373 P.3d 186 ("[A]ttorney discipline cases . . . are not criminal. They are civil." (citations omitted)).

These challenges are unpreserved.[10] We will not consider unpreserved objections on appeal absent plain error or exceptional circumstances. *State v. Larrabee*, 2013 UT 70, ¶ 15, 321 P.3d 1136. Because no argument for plain error or exceptional circumstances exists here, we decline to consider these challenges.

¶26 We find no error in the district court's determination on the relevance, unfair prejudice, and admissibility of the evidence and we will not consider the unpreserved challenges regarding expert witness opinion testimony. Therefore, we must next turn to whether the district court erred in concluding that Mr. Steffensen violated the Utah Rules of Professional Conduct.

*B. Violations of Rule 8.4(b) and (c)*

1. Violation of Rule 8.4(b)

¶27 Rule 8.4(b) states that "[i]t is professional misconduct for a lawyer to . . . (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." UTAH R. PROF'L CONDUCT 8.4(b). To qualify as professional misconduct a criminal act alone is insufficient. It must also reflect poorly on the qualities required of a practicing attorney (i.e., "honesty, trustworthiness or fitness as a lawyer in other respects"). *Id.* Here, the court concluded, by a preponderance of the evidence, that Mr. Steffensen committed the criminal acts of Failure to Render a Proper Tax Return and Attempted Failure to Render a Proper Tax Return. It further concluded that these "criminal acts reflect adversely on his honesty, truthfulness or fitness as a lawyer [i]n other respects[]" in violation of rule 8.4(b).

---

[10] "[I]n order to preserve an issue for appeal[,] the issue must be presented to the [district] court in such a way that the [district] court has an opportunity to rule on that issue." *Brookside Mobile Home Park, Ltd. v. Peebles*, 2002 UT 48, ¶ 14, 48 P.3d 968 (citation omitted). Mr. Steffensen argues that he preserved these issues for our review. But the portion of the transcript he cites as preserving challenges to expert and opinion testimony were objections to an exhibit on those grounds, not the testimony of Ms. Gamon. This is insufficient to preserve an objection to Ms. Gamon's testimony on the expert testimony grounds Mr. Steffensen now raises.

¶28 Finding that Mr. Steffensen failed to render a proper tax return, a violation of Utah Code section 76–8–1101(1)(c)(i), required finding that Mr. Steffensen "knowingly and intentionally, and without a reasonable good faith basis, fail[ed] to . . . render . . . any return within the time required by law."[11] Mr. Steffensen does not dispute that during the four-year period in question his law firm did not render tax returns. And the district court found no evidence of a good faith basis for the failure. Therefore, the main issue before the district court was whether Mr. Steffensen acted knowingly and intentionally.

¶29 Mr. Steffensen argues that *he* did not "knowingly and intentionally" fail to file, but rather that his employees failed to file. On the other hand, the OPC presented circumstantial evidence of Mr. Steffensen's state of mind, requiring the district court to make a credibility determination by weighing the evidence before it. Here the court determined that the criminal acts were committed "knowingly or intentionally." Circumstantial evidence before the district court supported its findings of fact, which in turn support the determination that Mr. Steffensen met the *mens rea* required by statute in failing to file the tax returns.[12] When making determinations based on circumstantial evidence, the district court does not do this in a vacuum. Rather, the court uses common sense to make inferences and find facts. And while we recognize that attorney discipline cases have a unique standard of review in which we might draw different inferences than the district court, *see supra* ¶¶ 14–15, we do not do this indiscriminately. In general, we adhere to our standard level of deference, and "[s]o long as there is some evidence, including reasonable inferences, from which findings . . .

---

[11] There are three other ways of proving a violation of Utah Code section 76–8–1101(1)(c)(i): (1) failing to supply timely information, (2) rendering a false or fraudulent return or statement, or (3) supplying false or fraudulent information. Because the district court does not rely on these violations for his criminal acts, we do not address them.

[12] Holding that evidence is sufficient to support the finding of failure to file necessarily includes finding that the evidence supports the attempted failure to file charge.

can reasonably be made, our inquiry stops." *State v. Booker*, 709 P.2d 342, 345 (Utah 1985); *see also In re Discipline of Reneer*, 2014 UT 18, ¶ 11, 325 P.3d 104 ("Under this less deferential . . . standard of review, *we still 'presume that the [district court's] finds of fact are correct*, although we may set those findings aside if they are not supported by the evidence.'" (emphasis added) (citation omitted)).

¶30 The district court's findings regarding Mr. Steffensen's mental state were certainly not clearly erroneous. Mr. Steffensen has had a lengthy career as a practicing lawyer. "Mr. Steffensen is a bright and accomplished lawyer, not someone with ignorance of the laws." He has worked for large firms, as a solo practitioner, and at small law firms he owned and operated. Mr. Steffensen testified that he knew about the requirements surrounding withholding taxes. Mr. Steffensen had dealt with the ramifications of failing to pay federal taxes and as a result "would have been acutely aware of his obligations going forward." "There were numerous offenses" and "numerous occasions of his failure to remit." Mr. Steffensen also testified that because he failed to remit withholding taxes, he has paid penalties and fines (totaling about $100,000), approximately double what he would have paid had he remitted the taxes timely.

¶31 Mr. Steffensen offered only his own testimony to the district court as a defense. He offers the same testimony to us to challenge the district court's order.[13] He claims that he delegated all financial responsibilities to his staff and that the tax problems arose from incompetence. Mr. Steffensen argues that, during the period in question, stressful and difficult problems at home impaired his functions at work.[14] Mr. Steffensen claims that, as a "bright and

---

[13] It is unclear in his brief whether Mr. Steffensen is challenging the sufficiency of the evidence to support the district court's factual findings or whether he is arguing that the factual findings do not support the conclusion that he violated rule 8.4(b). Regardless of which challenge Mr. Steffensen is lodging, we conclude that the district court's factual findings and ultimate rule 8.4(b) determination are adequately supported.

[14] The district court considered this as a mitigating factor for the sanctions but did not make any factual findings regarding these circumstances during the adjudication proceedings.

accomplished lawyer," he would not operate against his own self-interest when he knew that criminal liability would only attach to his failure to render the tax returns, with only financial liability attaching to his failure to pay.

¶32 In balancing the weight of the circumstantial evidence of Mr. Steffensen's mental state on the one hand and Mr. Steffensen's personal testimony to the contrary on the other, the question turns on his credibility.[15] On this matter, we defer to the district court.[16] It was reasonable for the district court to conclude that Mr. Steffensen was fully aware of his tax obligations. Indeed, at oral argument, Mr. Steffensen candidly admitted that even those closest to him with the best ability to judge his character found his story hard to swallow. Moreover, considering this admission in addition to all the other factual findings before us, we choose to defer to the district court's determination and find that the evidence supports the district court's findings, which in turn support its legal conclusion that, by a preponderance of the evidence, Mr. Steffensen violated Utah Code sections 76-8-1101(1)(c)(i) and 76-4-101 by knowingly and intentionally failing to render a tax return and attempting to do so.

---

[15] At oral arguments, Steffensen conceded that the district court necessarily made a credibility determination in finding that he had violated the Utah Rules of Professional Conduct.

[16] This is the quintessential type of a district court finding to which we give deference. *See supra* ¶ 15. "We defer to the [district] court's ability and opportunity to evaluate credibility and demeanor." *Am. Fork City v. Thayne*, 2012 UT App 130, ¶ 4, 279 P.3d 840 (internal quotation marks omitted) (citing *State v. Goodman*, 763 P.2d 786, 787 (Utah 1988)). "[W]e defer to [the district court's] findings unless the record demonstrates clear error. Thus, a challenge to the district court's credibility determination fails if [the challenging party] has provided no reason for this court to depart from the deference we grant the [district] court to make credibility determinations." *Id.* (citation omitted) (internal quotation marks omitted).

¶33 Having agreed with the district court that Mr. Steffensen's conduct satisfies the "criminal acts" element of professional misconduct under rule 8.4(b), we also agree that these acts reflect negatively "on a lawyer's honesty, trustworthiness or fitness . . . in other respects." UTAH R. PROF'L CONDUCT 8.4(b). "Attorneys occupy a position of trust because their clients rely on their honesty, skill, and good judgment." *In re Discipline of Bates*, 2017 UT 11, ¶ 19, 391 P.3d 1039. When a lawyer intentionally fails to file and render taxes, his "honesty" and "trustworthiness" are unquestionably called into doubt. Knowingly and intentionally avoiding one's employee withholding tax obligations as owner of a law firm also undermines the public's trust in the legal profession. *See* UTAH R. PROF'L CONDUCT 8.4 cmt. 2 ("Many kinds of illegal conduct reflect adversely on fitness to practice law, such as . . . the offense of willful failure to file an income tax return.").

¶34 Taxes generally fail to provide the payer with a warm and fuzzy feeling. "Our new Constitution is now established, and has an appearance that promises permanency; but in this world nothing can be said to be certain, except death and taxes." 10 Letter from Benjamin Franklin to Jean Baptiste Le Roy (Nov. 13, 1789), *in* THE WRITINGS OF BENJAMIN FRANKLIN 68, 69 (Albert Henry Smyth ed. 1907). Certain or not, "knowingly and intentionally" failing to file taxes is a crime that reflects adversely on a lawyer's fitness to practice law.

2. Violation of Rule 8.4(c)

¶35 Rule 8.4(c) defines "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation" as professional misconduct. UTAH R. PROF'L CONDUCT 8.4(c). Unlike rule 8.4(b), which requires criminal conduct, rule 8.4(c) looks at professional misconduct irrespective of criminality. The district court concluded that "Mr. Steffensen engaged in conduct involving dishonesty, fraud, deceit or misrepresentation and his conduct violated Rule 8.4(c) of the Utah Rules of Professional Conduct." We agree.

¶36 The district court concluded that Mr. Steffensen had committed three violations of rule 8.4(c). First, the district court concluded that Mr. Steffensen's failure to remit money that was not owned by his firm was dishonest conduct. Specifically, in addition to failing to render proper tax returns, Mr. Steffensen also failed to remit withholding taxes. By his own testimony, the money was never withheld because there was only enough money to cover the net income of his employees. The district court found that

"Mr. Steffensen acknowledged that funds that were to be withheld from employee's checks were not withheld. Instead, [he] calculated his payroll obligations on the net amount and in doing so underpaid his employees." Despite maintaining a "client trust account," Mr. Steffensen failed to maintain the similar "Tax Commission trust account" for his employees' tax funds. The court acknowledged that "[t]he tax monies Mr. Steffensen failed to remit were not owned by him or his law firm," and this "had the potential for causing substantial damage to his employees."

¶37 Second, and relatedly, Mr. Steffensen provided W2s to his employees that reflected that money was withheld and remitted to the state government. The district court concluded that representing to his employees that money was withheld and remitted to the state when it was not clearly fell within the bounds of misrepresentation.

¶38 Finally, the district court concluded that Mr. Steffensen violated rule 8.4(c) because he presented financial statements "to his bank in order to get a loan [that] conflicted with forms he presented to the Tax Commission to obtain a financial hardship exemption." The statements contained in his financial hardship application "contained material misrepresentations."

¶39 Mr. Steffensen makes only two challenges to the district court's conclusion that he violated rule 8.4(c). The first is that for the same reasons the OPC could not show he acted "knowingly and intentionally" for purposes of rule 8.4(b), it could not show that he "knowingly and intentionally engaged in conduct involving dishonesty, deceit or misrepresentation in violation of Rule 8.4(c)." We have already affirmed the district court's determination that Mr. Steffensen acted knowingly and intentionally.[17]

---

[17] The district court determined that "Mr. Steffensen did knowingly and intentionally fail to render the tax returns and fail to pay the withholding taxes." Although we only considered the district court's determination of whether Mr. Steffensen acted knowingly and intentionally with regards to failing to render the return when evaluating the district court's determination that Mr. Steffensen violated rule 8.4(b), the district court's conclusion on failing to pay the taxes was based upon the exact same

¶40 The second challenge is with regard to the discrepancies between the bank loan application and the information and records given to the Tax Commission when he applied for a hardship exemption. Mr. Steffensen argues that the finding that the discrepancies in his information given to the bank and the Tax Commission constituted a misrepresentation was erroneous. According to Mr. Steffensen, the district court's finding was based on the following discrepancy: in 2005, he listed shares of restricted stock as part of his financial assets on a loan application but then did not list them as part of his 2008 hardship exemption application to the Tax Commission. Mr. Steffensen admits that the documents contained "substantially different financial information," but contends that it was because the restricted stock had no value by 2008, a fact to which he testified at trial.

¶41 In response, the OPC argues that "[n]o evidence was introduced to corroborate Mr. Steffensen's testimony regarding the stated loss of value." Additionally, the OPC agrees that the discrepancy discussed by Mr. Steffensen was one of the misrepresentations found by the district court, but contends that "there were other discrepancies that the district court found to be misleading when Mr. Steffensen provided information to the Tax Commission."

¶42 The OPC does not provide any record support for its assertion that the district court found other material misrepresentations and we cannot find any support for this contention in the district court's order.[18] Therefore, we focus on

circumstantial evidence. For the exact same reasons discussed above, *see supra* ¶¶ 28–32, we will not disrupt the district court's determination of "knowingly and intentionally" with respect to failing to pay the taxes.

[18] The district court's order on the specific factual basis for the misrepresentations is unclear. The district court makes two relevant findings in its order, which read, in full: (1) "Mr. Steffensen's financial statements that he presented to his bank in order to get a loan conflicted with forms he presented to the Tax Commission to obtain a financial hardship exemption" and (2) "Mr. Steffensen's statements about his income and finances which he presented to the Tax Commission to receive a financial hardship exemption contained material misrepresentations."

whether the district court erred in determining that the discrepancies in the stock assets listed on the 2005 loan application and 2008 hardship exemption application constituted a material misrepresentation. We conclude that it did.

¶43 Mr. Steffensen testified at trial that the stock had no value by the time he submitted his hardship exemption application in 2008. The OPC offers us no evidence, direct or circumstantial, to contradict Mr. Steffensen's testimony. Instead, the OPC hangs its hat on the fact that Mr. Steffensen never presented evidence of the stocks' decrease in value.[19] This is insufficient.

¶44 The OPC has the burden of proving that Mr. Steffensen committed each violation of the Utah Rules of Professional Conduct by a preponderance of the evidence. *See* R. GOVERNING UTAH STATE BAR 14-517; *In re Discipline of Steffensen*, 2016 UT 18, ¶ 5, 373 P.3d 186. The OPC cannot meet this burden of proving that Mr. Steffensen's hardship application contained a misrepresentation by merely highlighting that he did not provide additional support to his uncontradicted testimony explaining the discrepancy. Because the OPC fails to provide any evidentiary support that undermines Mr. Steffensen's explanation for the discrepancy, we conclude that the district court erred in determining that the hardship exemption application contained a misrepresentation.

¶45 Therefore, we reject the district court's third finding of a violation of rule 8.4(c), but leave the other two findings—the dishonest conduct in failing to remit the tax monies and the misrepresentations on the W2s—untouched. Therefore, in determining the appropriate sanctions for Mr. Steffensen's violations of rule 8.4(c), only the two remaining violations should be considered.

## II. DISBARMENT IS AN INAPPROPRIATE SANCTION UNDER RULE 14-605(a)(1) OR (a)(2)

¶46 We typically defer to the district court's findings in attorney discipline cases in circumstances like this where the district court

---

[19] Mr. Steffensen claims that he did not submit evidence at trial on the 2008 value of the stocks because he "did not know that this would be an issue at trial."

has to make a credibility determination of a witness. However, when the analysis involves "the discipline actually imposed," this task invokes "our constitutional responsibility" and "requires us to make an independent determination as to its correctness." *In re Discipline of Grimes*, 2012 UT 87, ¶ 12, 297 P.3d 564 (citation omitted). In doing so, we are conscious of the serious consequences that can result. "Disbarment is the harshest sanction available for attorney misconduct. It . . . result[s] in the complete loss of [the attorney's] career and reputation." *In re Discipline of Bates*, 2017 UT 11, ¶ 20, 391 P.3d 1039 (third alteration in original) (citations omitted) (internal quotation marks omitted). Because disbarment is so harmful to an attorney, we do not take its imposition lightly. And, in this case, we find disbarment under rule 14-605(a)(1) or (a)(2) of the Rules Governing the Utah State Bar unsubstantiated, and we remand for a new determination of the appropriate sanction.

### A. Disbarment Under Rule 14-605(a)(1)

¶47 Rule 14-605(a)(1) states, in relevant part, that disbarment is appropriate when a lawyer "knowingly engages in professional misconduct as defined in Rule 8.4(a), (d), (e), or (f) of the Utah Rules of Professional Conduct." R. GOVERNING UTAH STATE BAR 14-605(a)(1). Notably, rule 8.4(b) and (c) are absent in rule 14-605(a)(1), which governs sanctions for the other sections of Utah Rule of Professional Conduct 8.4. We presume this omission was intentional. Further, the structure of the rule confirms that this omission was no mistake.

¶48 Rule 14-605 distinguishes between behavior that qualifies for disbarment, suspension, reprimand, and admonition. Not all professional misconduct defined in rule 8.4(a), (d), (e), or (f) results in presumptive disbarment, and it is therefore graded using specific criteria as shown in rule 14-605(a)(1), (b)(1), (c)(1), and (d)(1). Violations of rule 8.4(b) or (c) are notably absent from 14-605(a)(1), (b)(1), (c)(1), and (d)(1). Instead, the appropriate sanctions for violations of rule 8.4(b) or (c) appear in other subsections of rule 14-605.

¶49 The language of subsections (a)(2) and (b)(2) mirror the criminal conduct requirements of rule 8.4(b), providing for sanctions when an attorney "engages in serious criminal conduct," R. GOVERNING UTAH STATE BAR 14-605(a)(2), or "engages in criminal conduct" that does not meet the requirements of subsection (a)(2), *id.* 14-605(b)(2). Similarly, the language of subsections (a)(3) and (c)(2) provide for sanctions for "dishonesty, fraud, deceit, or

misrepresentation," mirroring the misconduct in rule 8.4(c). This structure and the nature of the language of rule 14-605 confirm that the omission of rule 8.4 sections (b) and (c) from rule 14-605(a)(1) is not only intentional, but also significant.

¶50   The OPC argues that by virtue of comment [1a] of rule 8.4, any violation of the Utah Rules of Professional Conduct falls under the umbrella of rule 8.4(a) when the time for sanctions arrives.[20] This cannot be the case. To begin, "[t]he comments are intended as guides to interpretation, but [only] the text of each rule is authoritative." UTAH R. PROF'L. COND. pmbl. 21. Although comment [1a] is not authoritative, it does "explain[] and illustrate[] the meaning and purpose of the rule." *Id.* As to rule 8.4(a), comment [1a] explains that a violation of another Utah Rule of Professional Conduct may not be the sole basis for charging 8.4(a) as a separate violation. Vitally, however, comment [1a] "defines professional misconduct as a violation of the Rules of Professional Conduct," thus bringing any violation of the Utah Rules of Professional Conduct under the imposition of sanctions standards found in rule 14-605.[21] UTAH R. PROF'L. COND. 8.4(a) cmt. [1a].

---

[20] This comment provides:

> A violation of paragraph (a) based solely on the lawyer's violation of another Rule of Professional Conduct shall not be charged as a separate violation. However, this rule defines professional misconduct as a violation of the Rules of Professional Conduct as the term professional misconduct is used in the Supreme Court Rules of Professional Practice, including the Standards for Imposing Lawyer Sanctions. In this respect, if a lawyer violates any of the Rules of Professional Conduct, the appropriate discipline may be imposed pursuant to Rule 14–605.

UTAH R. PROF. COND. 8.4(a) cmt [1a].

[21] Professional misconduct that falls under rule 8.4(b), (c), (d), (e) or (f) cannot also fall under rule 8.4(a) for the purpose of sanctions. Conduct that violates other rules of professional conduct, however, falls under rule 8.4(a) for the purpose of sanctions.

¶51 We recognize that the language of comment [1a] is confusing and could be read to incorporate all violations of the Utah Rules of Professional Conduct, including rule 8(b) through (f), into its grasp. But we believe a fairer reading of the comment limits its scope to violations of rules other than rule 8.4. If a violation of any of the Utah Rules of Professional Conduct could also be a violation of rule 8.4(a), rule 14-605(a)(1), (b)(1), (c)(1), and (d)(1) would encompass the entirety of rule 8.4, including rule 8.4(b) and (c), rendering the rest of rule 14-605 superfluous. Indeed, rule 8.4(a) would subsume every other rule in the Utah Rules of Professional Conduct, including rule 8.4(d), (e), and (f). We do not believe that comment [1a] intended such a result.

¶52 Additionally, we must give meaning to the text of rule 14-605 as written, and that meaning is clear: Professional misconduct as defined by rule 8.4(b) and (c) is expressly and intentionally excluded from rule 14-605(a)(1), (b)(1), (c)(1), and (d)(1). Violations of rule 8.4(b) do not trigger disbarment under rule 14-605(a)(1) when violated but must be assessed under subsections (a)(2) and (b)(2) for the appropriateness of disbarment. Similarly, violations of rule 8.4(c) do not trigger disbarment under rule 14-605(a)(1) but must be assessed under subsections (a)(3) and (c)(2).

*B. Disbarment Is Inappropriate Under Rule 14-605(a)(2)*

¶53 Absent aggravating or mitigating factors, "serious criminal conduct" gives rise to a presumptive sanction of disbarment under rule 14-605(a)(2) when "a necessary element" of the crime "includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution, or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses." Otherwise, if one of these elements is not *necessarily* included, but the criminal act in question "nevertheless seriously adversely reflects on the lawyer's fitness to practice law," the presumptive sanction is suspension. R. GOVERNING UTAH STATE BAR 14-605(b)(2).

¶54 Mr. Steffensen argues that rule 14-605(a)(2) cannot apply to him because the district court did not enter a specific finding that his criminal conduct was "serious." In this case, we do not need to reach the seriousness issue because we find that neither of the criminal acts specifically found by the district court have one of the listed elements as a *necessary* element.

¶55 In order to determine the necessary elements of a crime, we follow a categorical approach. *See State v. Tulley*, 2018 UT 35, ¶ 59, __ P.3d __. Under a categorical approach, we "examine[] the ordinary case of [a] defendant's crime and not the particular conduct in which the defendant engaged." *Id.* (second alteration in original) (citation omitted) (internal quotation marks omitted). Therefore, we must "identify the minimum criminal conduct necessary for conviction under a particular statute and look only to the statutory definitions—*i.e.*, the elements of [the] . . . offense[], and *not* to the particular [underlying] facts." *Id.* (alterations in original) (citation omitted) (internal quotation marks omitted).

¶56 In its conclusions of law for the violation of rule 8.4(b) adjudication phase order, the district court specifically concluded that Mr. Steffensen committed the criminal acts of Failing to Render a Proper Tax Return and Attempted Failing to Render a Proper Tax Return. This required the district court to conclude that Mr. Steffensen "knowingly and intentionally, and without a reasonable good faith basis, fail[ed] to . . . render . . . any return within the time required by law" and that he also attempted to do so. *See* UTAH CODE §§ 76-8-1101(1)(c)(i); 76-4-101. But the district court was not required to find, as a necessary element, that Mr. Steffensen's criminal conduct included "intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution, or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses." R. GOVERNING UTAH STATE BAR 14-605(a)(2). Because neither of the criminal acts found by the district court have one of the necessary elements listed in rule 14-605(a)(2), we hold that disbarment is unwarranted under that subsection.

*C. Appropriate Sanction Under Rule 14-605*

¶57 We have rejected the appropriateness of disbarment as the presumptive[22] sanction under rule 14-605(a)(1) or (a)(2). The court

---

[22] The district court found "that the mitigating circumstances [did] not warrant a deviation from the presumptive sanction." Because we reject the district court's imposition of sanctions and

did not make any conclusions of law in the sanctions hearing about disbarment under rule 14-605(a)(3). Without specific findings that a violation of rule 8.4(c) falls under the requirements of rule 14-605(a)(3), including that it "seriously adversely reflects on the lawyer's fitness to practice law" and is "intentional misconduct" *other* than conduct that would fall under rule 14-605(a)(1) or (a)(2), we will not presume disbarment is the appropriate sanction under rule 14-605(a)(3). "[A]lthough we always give serious consideration to the findings and [rulings] of the [district court]," we will not hold that disbarment is appropriate without clear documentation of the rationale and reasoning for the court's conclusion. *In re Discipline of Bates*, 2017 UT 11, ¶ 17 (second and third alterations in original) (citation omitted); *see also In re Discipline of Ince*, 957 P.2d 1233, 1236 (Utah 1998) ("With respect to the discipline actually imposed, our constitutional responsibility requires us to make an independent determination as to its correctness.").

¶58 This does not imply that Mr. Steffensen's conduct must go unsanctioned. Rule 14-605 leaves open several possibilities, including that his conduct for violating rule 8.4(c) falls under rule 14-605(a)(3) or (c)(2), and that his conduct for violating rule 8.4(b) "seriously adversely reflects on [Mr. Steffensen's] fitness to practice law," warranting suspension under rule 14-605(b)(2).

¶59 Here, the district court does find that "Mr. Steffensen's failure to remit tax monies [not owned by him or his law firm but belonging to the employees] affected his employees who were entitled to rely on him to remit their taxes." This "failure to remit" the money that should have been held in trust for his employees "had the potential for causing substantial damage to his employees"[23] and was dishonest conduct. And, "[t]he distribution

_____

remand for a new sanctions determination, we do not consider Mr. Steffensen's challenges to the district court's conclusion on the aggravating and mitigating factors.

[23] The district court also found that "Mr. Steffensen's violation of the Rules of Professional Conduct caused or at least potentially caused serious injury to Mr. Steffensen's former employees and to the public." For purposes of sanctions, this finding falls under rule 14-605(a)(1). To avoid any confusion, we take this opportunity to highlight that rule 14-605(a)(1) requires a finding that the lawyer's professional misconduct "*causes* serious or potentially serious

of W2s to the employees stating that the tax monies had been withheld and remitted" was dishonest conduct and a misrepresentation under rule 8.4(c). The "potential for causing substantial damage to his employees" is not the same as "seriously adversely reflect[ing] on the lawyer's fitness to practice law." In the orders before us, the district court did not make any determinations as to the appropriate sanctions that misconduct under rule 8.4(c) merits other than lumping this misconduct together with the misconduct found in rule 8.4(b) to reach disbarment under rule 14-605(a)(1). We have rejected rule 14-605(a)(1) as inappropriate for violations of rule 8.4(b) or (c). And we have further rejected rule 14-605(a)(2) as the appropriate sanction for violations of rule 8.4(b).

¶60 Without reopening the proceedings, we leave it to the district court to interpret its own order and encourage the court to include more detailed findings specific to each violation and the rationale behind the sanction imposed for each violation. In doing so, we implore all state district courts to be detailed in their findings and to be clear in tying the sanction imposed to the professional misconduct found. Therefore, having rejected disbarment under rule 14-605(a)(1) and (a)(2), we remand to the district court for clarification of its findings of fact and conclusions of law in its order regarding Mr. Steffensen's sanctions for professional misconduct under rule 8.4(b) and (c).

## CONCLUSION

¶61 Having reviewed the findings and conclusions from both Mr. Steffensen's adjudication and sanction hearings, we hold that there was no clear error in concluding that Mr. Steffensen had violated rule 8.4(b) and (c) of the Utah Rules of Professional Conduct. However, upon analyzing and clarifying the interpretation and application of rule 14-605, we hold that disbarment is unwarranted under subsections (a)(1) and (a)(2).

¶62 While we could enter a final judgment in this case under our constitutional mandate, we deem it more prudent to remand to the district court for reconsideration of the appropriate sanctions.

---

injury." R. GOVERNING UTAH STATE BAR 14-605(a)(1) (emphasis added). It is insufficient to find, as the district court did here, that the misconduct "*potentially caused* serious injury." (Emphasis added.)

With a cold record before us, we recognize that the district court is better situated, in the first instance, to make the necessary determinations under Rule Governing the Utah State Bar 14-605.

¶63 For this reason, we affirm the district court's finding of violations of the Utah Rules of Professional Conduct, reverse the ruling on Mr. Steffensen's disbarment, and remand to the district court for a new determination of the appropriate sanctions.